# APPEALS OF FOURTH NATIONAL BANK, ET AL.

## [ASSIGNED ESTATE OF WILLIAM HOLMES.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 5, 1888—Decided January 7, 1889.

1. When a mortgage is taken as security for a number of notes and the mortgagee afterward becomes insolvent, neither a creditor of the bank attaching some of the notes, nor the assignee of the bank itself, can receive payment out of the proceeds of the mortgaged premises, insufficient to pay all, until one holding others of the notes under indorsement from the bank before maturity is fully paid.

(a) A bank discounted a customer's notes secured by a mortgage, and before their maturity transferred some of them to A. and others of them to B., as collateral security, and afterwards became insolvent and made an assignment for the benefit of creditors.

(b) The indebtedness secured by the notes held by A. was paid by other collateral, but before the notes were turned over to the assignee of the bank, they were attached at the suit of another creditor for a debt of the bank, and a contest then arose in the distribution of the proceeds of the mortgaged premises.

2. Neither the rights and equities of the attaching creditor, nor those of the assignee of the bank, were higher in degree than the rights and equities of the bank itself in whose place they both stood.

3. Upon the notes attached in the hands of A. the bank was under no

Statement of Facts.

liability, while upon the notes held by B. it was still liable as a surety by virtue of its indorsements.

4. Wherefore, neither the attaching creditor nor the bank's assignee had the right to receive payment upon the notes in the hands of A. until the notes held by B., upon which the bank stood as surety, were paid in full.

5. Donley v. Hays, 17 S. & R. 400, and Hodge's App., 84 Pa. 359, and other kindred cases, distinguished; the principle of Himes v. Barnitz, 8 W. 39, and Worrall's App., 41 Pa. 524, followed.

Before GORDON, C. J., PAXSON, GREEN, CLARK, WILLIAMS and HAND, JJ.; STERRETT, J., absent.

No. 210 October Term 1888, Sup. Ct.; court below, No 740 September Term 1884, C. P. No. 1.

On May 31, 1887, the account of I. F. Brainard and Julius Voetter, assignees of Holmes, Lafferty & Co., for the benefit of creditors, was filed, showing a fund for distribution of $25,131.96, and on July 6, 1887, the account having been confirmed absolutely, *Mr. W. S. Pier* was appointed auditor to report a distribution of said balance to and among creditors.

The auditor's report was filed on February 1, 1888, when the facts upon which the contention arose appeared, to wit:

On April 2, 1883, William Holmes, of the firm of Holmes, Lafferty & Co., live stock dealers, doing business in the city of Pittsburgh, executed a mortgage to the Penn Bank of Pittsburgh on certain real estate in said city belonging to him, individually, in the penal sum of $80,000, to secure the payment of certain promissory notes and renewals thereof made by Holmes, Lafferty & Co., William Holmes, W. J. Lafferty and S. M. Lafferty (the last three named persons being the individuals composing said firm), or indorsed by them, or either of them, and discounted by said Penn Bank and belonging to it, its successors and assigns. This mortgage was duly recorded on the day of its execution and the promissory notes hereinafter mentioned, seven in number, were notes or renewals thereof which were discounted by said bank for Holmes, Lafferty and Co., and were secured thereby.

On May 26, 1884, the Penn Bank made a voluntary assignment for the benefit of its creditors to Henry Warner, at which time it had parted with all of said notes, and the same were then held as follows:

### Statement of Facts.

Thomas Hare, as agent for certain of the directors of the Penn Bank, held two of said notes which the bank had previously assigned to him, with a large number of other notes and securities, to secure said directors for a personal obligation into which they had entered for the benefit of the bank. One of these notes was dated May 21, 1884, at four months, for $10,000; the other was dated May 6, 1884, at four months for $5,000.

The German National Bank of Pittsburgh held two of said notes; one dated March 8, 1884, at four months for $5,000; the other dated April 26, 1884, at four months for $10,000; both of which it acquired before maturity and for value.

The American Exchange National Bank of New York held the remaining three of said notes; one dated February 15, 1884, at four months for $5,000; one dated February 26, 1884, at four months for $10,000; and the other, dated April 5, 1884, at four months for $5,000; all of which had been assigned to it by the Penn Bank some time before its failure, along with a number of notes made by other parties, as collateral security for the indebtedness of the Penn Bank to the said American Exchange National Bank.

All of the above notes bear the indorsement of the Penn Bank and were duly protested for non-payment.

Some time in May, 1884, and shortly prior to the voluntary assignment of the Penn Bank, the Fourth National Bank of New York, being a creditor of the Penn Bank for over $24,000, issued a process of attachment out of the Supreme Court of the city of New York under the statutes of that state, to secure payment of its indebtedness, and attached in the hands of the said American Exchange National Bank, subject to the lien of said bank, the three notes above mentioned held by said bank as collateral security aforesaid, being notes made by Holmes, Lafferty & Co., and indorsed by William Holmes.

In August, 1884, Holmes, Lafferty & Co., both as a firm and as individuals, executed deeds of voluntary assignment to Ira F. Brainard and Julius Voetter for the benefit of their creditors, and subsequently their said assignees made a public sale of the real estate covered by said mortgage, under an agreement with all parties interested that the lien secured thereby on said premises for the payment of said notes, should be transferred from the land to the proceeds of sale.

After the commencement of said attachment of the Fourth National Bank, Henry Warner, assignee of the Penn Bank, intervened therein in opposition thereto, and the case is now pending in the New York Court of Appeals, on the question raised by said assignee whether under the statutes of that state the attachment is valid. It was agreed, however, before the auditor by the counsel representing the different parties in interest that the payment of whatever amount might be determined to be applicable to said notes out of the fund for distribution, should abide the final determination of said appeal and of the question between said assignee and the Fourth National Bank as to the ownership of said notes.

The American Exchange National Bank, of New York, admitted through its counsel and by a written statement produced before the auditor, that it had received payment in full of its indebtedness out of some other collaterals assigned to it by the Penn Bank, and therefore had no further claim on the notes which the Fourth National Bank had attached in its hands.

The auditor reported his conclusions of law arising upon the foregoing facts, to wit:

The questions that arise upon this distribution relate to the standing of the Fourth National Bank of New York, in its claim to participate in the fund. On the one side it is contended by the counsel for the claimant that, by virtue of the attachment proceedings, the notes assigned by the Penn Bank to the American Exchange National Bank were lawfully assigned to the claimant, by operation of law under the attachment, after the satisfaction of the indebtedness due the American Exchange National Bank, for which they were first pledged; and that it is entitled to participate in the distribution to the same extent that it would have been, had the notes been directly assigned by the Penn Bank to the claimant before maturity and before insolvency.

On the other hand this position is controverted by the counsel for the creditors, who claim under the notes which they have offered in evidence, by virtue of bona fide assignment indorsement before maturity, and they contend that,

1. The claimant has no right to offer the notes in evidence

heretofore pledged to the American Exchange National Bank, because under the laws of the commonwealth there can be no attachment of the evidences of indebtedness in the hands of the holder of such obligations, but that the attachment, in order to be valid, must be of the debt, and not the mere evidence of it, in the hands of the person owing it; and

2. That even though this attachment should be held to be a valid attachment, yet still the attaching creditor must stand in the shoes of the defendant in the attachment, as to all other persons than the defendant; that is to say, in this attachment, wherein the notes pledged to the American Exchange National Bank were attached, the rights of the attaching creditor as against all other persons are the same as the rights of the Penn Bank, and, so far as the Penn Bank could maintain its claim to participate in this distribution, can the attaching creditor do so.

[The auditor, as to the first objection, held that under the decisions of this state, citing Morgan v. Neville, 74 Pa. 52; Bolton v. Penn. Co., 88 Pa. 261, and Thornton v. Insurance Co., 31 Pa. 529, anything which is a part of the remedy is within the jurisdiction of the lex fori, and that the objection was therefore not well taken. The report then proceeded:]

The counsel for the Fourth National Bank contends that the attachment, assuming it to be valid, was in effect an assignment of the attached notes to the attaching creditor, and for this proposition he cites Rushton v. Rowe, 64 Pa. 63, where it was said by Chief Justice THOMPSON, discussing the effect of the foreign attachment of a mortgage debt in the hands of the debtor, " To make that available to the creditor, it must be sued upon, and the law regards the attachment of it as an assignment to the attaching creditor." But this seems to be a mere dictum, and was said by the court in determining whether or not the attaching creditor would have the right to issue a scire facias upon the mortgage to his use. Nor does the auditor think that it adjudges that the attachment in this case would operate to assign the notes in question to the Fourth National Bank, or to put it in the same position as one who by agreement of the parties had received the notes as a pledge for the payment of indebtedness.

But, although the auditor is of opinion that it is extremely

doubtful, to say the least, whether the attaching creditor has any higher rights than the Penn Bank would have, yet other reasons render it unnecessary to pass upon this question, because, in the auditor's opinion, they are of controlling importance in this case. If there were no attachments issued, and the notes had come back to their pledgor, the Penn Bank, or its assignee, still this fund would have to be distributed to the holders of all the notes which were secured by the mortgage pro rata, and notwithstanding the fact that. the Penn Bank was the indorser upon the paper held by the other preferred creditors of William Holmes, the proceeds of whose property is here for distribution. The fact that there is a liability on the part of the Penn Bank to those creditors, creates no lien in those creditors upon this fund. The lien, which they have, arises from the mortgage of the property which has been sold. It was made by William Holmes. That the Penn Bank afterwards indorsed the paper gives them no other lien upon the property of William Holmes than they had before. Their lien in the first place was for the proportionate share of the property, in the ratio that the notes which they hold bore to the whole amount of the notes secured by the mortgage. That being the collateral security to which they were entitled by virtue of William Holmes's mortgage, it is not increased or diminished by the indorsement of the Penn Bank; and if the Penn Bank were in possession of the notes which it pledged to the American Exchange National Bank, its assignee would now be entitled to participate in the fund for the benefit of the general creditors of the Penn Bank, just as any other holders of the secured paper.

There is another reason which seems to the auditor to be of controlling weight in the determination of the right of the attaching creditor to participate in this distribution. The objection is made by creditors of the Penn Bank against the participation of another creditor of the same bank. Before the auditor would be justified in excluding such a creditor, contrary to the equitable maxim, which is a part of the common law of Pennsylvania, that " Equality is equity," the rights of the contesting creditors against the Penn Bank by virtue of its indorsements ought to be settled in some other proceeding ; and the auditor is of opinion that a mere claim of liabili-

ty never adjudicated in any court is insufficient to give such creditors a standing here to contest the equal distribution of this fund among all the holders of the notes secured by the mortgage of the property out of which it arises.

For these reasons the auditor is of the opinion that if the Court of Appeals of New York shall finally determine the attachment proceedings therein pending, and which are in evidence in this case, to be a valid attachment, then the Fourth National Bank of New York is entitled to participate in this fund in the proportion which the notes attached in the hands of the American Exchange National Bank bear to the whole amount of the notes secured by the mortgage in this case; and if it shall be decided otherwise by that court, then the assignee of the Penn Bank is entitled to take that portion of the fund instead of the Fourth National Bank of New York.

The auditor then ascertained the balances due respectively upon the notes held by the German N. Bank of Allegheny, the notes attached by the Fourth N. Bank of New York, and the notes held by Thomas Hare, agent, and made a pro rata dividend to each, awarding to the notes attached by the Fourth N. Bank alternatively to H. Warner, assignee of the Penn Bank, or to the Fourth N. Bank as the attachment proceedings in the New York courts might finally be determined; and awarding further a portion of the fund applied to the notes held by Thomas Hare, agent, to Henry Warner, assignee, as reversionary owner thereof, after the obligations as security for which said Hare held them were paid.

On notice of the report to counsel, exceptions were filed on the part of the German N. Bank and Thomas Hare, agent, that the auditor erred, in effect, to wit:

1. In the alternative distribution made to the notes attached by the Fourth N. Bank.

2. In not awarding payment in full to the notes held by the German N. Bank.

3. In awarding any fund to the assignee of the Penn Bank.

Said exceptions having been overruled by the master, were filed with his report, and renewed in court. After argument thereof, the court, STOWE, P. J., on July 7, 1888, filed the following opinion:

I assume in this case that Henry Warner, the assignee of the Penn Bank, is the mere representative of the assignor, enjoying its rights only and bound where it is bound: Morris's App., 88 Pa. 382; Wright v. Wigton, 84 Pa. 163, and cases there cited; and, therefore, standing in the shoes of the bank, with no equities arising from the fact that he holds the assigned estate for the benefit of creditors. If this position is correct, the claim presented by the assignee must be treated as though it now belongs to the Penn Bank, admittedly insolvent, without the intervention of an assignment for benefit of creditors.

It is now well settled law in this state that when collateral security, such as a mortgage, is given to secure payment of several notes or bonds, some of which are assigned and some not, by the original obligor or creditors, and there is a deficiency for the payment of all the indebtedness thus secured, the amount recovered must be applied pro rata to all claims; those remaining in the hands of the original debtor taking their pro rata shares with those which have been assigned: Donley v. Hays, 17 S. & R. 400; Mohler's App., 5 Pa. 418. In the latter case, however, ROGERS, J., says: "I grant that had the assignor guaranteed the payment of the money, the assignee would be entitled to a preference." And in Hancock's App., 34 Pa. 155, where the court held, per WOODWARD, J., that a guarantee is a mere personal contract which would not affect subsequent bona fide purchases, assignees for value, he also says: "Possibly had Donaldson, the assignor, retained the other bonds he, the assignee, might be supposed to have also as against him an equity to be first paid."

It seems to me that the German National Bank and Thomas Hare, agent, are entitled to have their claims paid in full out of the fund in court before anything can be applied to the claim of Henry Warner, the assignee. As this will consume the whole fund in court, it is unnecessary to consider whether the Fourth National Bank of New York or Henry Warner, the assignee of the Penn Bank, will eventually prove successful in the case pending in New York, as in no case, if our view of this case is correct, could either party have any of the money now in court.

A final decree of distribution having been entered, awarding

Arguments.

the whole of the fund, after payment of costs, to the notes held by the German N. Bank and Thomas Hare, agent, the Fourth N. Bank and Henry Warner took these appeals, specifying as errors the sustaining of said exceptions and the decree of distribution made.

*Mr. Thos. C. Lazear* and *Mr. S. A. McClung* (*Mr. Chas. P. Orr* and *Mr. A. M. Brown* with them), for the appellants:

So far as regards the German N. Bank and Thomas Hare, agent, it matters not in the controversy in this court, whether the attached notes will go to the Fourth N. Bank or to Henry Warner, assignee. The only question here is, whether the notes themselves, without regard to their ownership, are entitled to a share of the fund for distribution, equally with the other notes secured by the Holmes mortgage.

1. Mohler's App., 5 Pa. 420; Perry's App., 22 Pa. 43; and Hancock's App., 34 Pa. 156, all recognize the rule first laid down in Donley v. Hays, 17 S. & R. 400, and last recognized in Hodge's App., 84 Pa. 359, that where a mortgage is given to secure a debt payable by instalments for which bonds are executed, and the fund arising from the sale of the mortgage falls short of the whole mortgage debt, the respective holders of the bonds are entitled to a pro rata dividend of the proceeds, according to the amount of their bonds; and that, too, without regard to the questions when the bonds are payable or who holds them, the rule being that even the mortgagee who has retained some of the bonds and assigned others, has the same right to participate in the fund as his assignees. The reason why this is so, is indicated in all the cases cited; but in Perry's App., supra, which was a case of a mortgage debt split up into instalments, it is briefly expressed in the statement of WOODWARD, J., who delivered the opinion, that "when instalment bonds are assigned, they pass, by relation, an equivalent portion of the mortgage debt."

2. The learned judge of the court below, however, endeavored to distinguish the case at bar from the cases cited, on the strength of language quoted from Hancock's App., 34 Pa. 156, and Mohler's App., 5 Pa. 420. But we think it is a sufficient reply to say that not only was the language quoted from Hancock's App., the mere expression of a doubt, and that from

Mohler's App., a mere dictum, but here there was no guaranty of any of the notes; and, so far as the Penn Bank incurred liability on the notes, all are alike in that respect, for the Penn Bank indorsed them all, and all were protested for non-payment. Moreover, the dictum on which the learned judge based his decision had reference to a controversy between a mortgagee holding some of the bonds secured by the mortgage, and other persons to whom he had assigned the remainder. Here, however, the Penn Bank, at the time of its assignment, held none of the notes secured by the Holmes mortgage, and the controversy is between rival creditors to whom they had been transferred, as to whom the maxim that equality is equity, should apply.

3. If there is a difference, so far as this question is concerned, whether the Fourth N. Bank or Henry Warner, assignee, shall eventually get the notes, it is in favor of the Fourth N. Bank, and arises by reason of the title to the notes it acquired under the attachment; for in Rushton v. Rowe, 64 Pa. 63, this court held that an attachment of a mortgage debt operated as an assignment of the debt. And, while it is true that an attaching creditor stands in the shoes of the defendant debtor, in one sense, this doctrine applies only as between the attaching creditor and the garnishee. Another proposition: The equity, if any exist, of the German N. Bank and Thomas Hare to have distribution prior to the Penn Bank, arises, when? Certainly when it appears by a sale of the mortgaged premises that the fund is insufficient to pay all. This occurred in the present case after title to the notes upon which we claim had vested in Henry Warner, in trust for the creditors of the Penn Bank. Under these circumstances the law will not inquire as to whether or not the holder holds for value. The assignee, in this matter, stands for the creditors.

*Mr. James H. Reed* and *Mr. James F. Robb* (with them *Mr. Phil. C. Knox*), for the appellees:

1. It is undoubtedly the law of Pennsylvania that the assignee for the benefit of creditors, is simply a volunteer. He claims through the assignor, and his rights rise no higher. He takes just what the assignor could have taken, and has no equities that the assignor could not have claimed: Kent's App., 87

Pa. 167; Morris's App., 88 Pa. 368; Wright v. Wigton, 84 Pa. 163; Bullitt v. M. E. Church, 26 Pa. 111; Roberts' Est., 2 Pa. 372; Twelves v. Williams, 3 Wh. 485; Vandyke v. Christ, 7 W. & S. 375. Henry Warner, assignee, therefore, in this case is the Penn Bank. And it is well settled also, as was said in Patten v. Wilson, 34 Pa. 299, that an attaching creditor stands exactly in the shoes of his debtor, and any equities that could be set up against the latter, are equally available against the former. And to the same effect is Strong v. Bass, 35 Pa. 333; Fessler v. Ellis, 40 Pa. 248; Dougherty v. Hunter, 54 Pa. 380. Assuming, therefore, that the attachment of the Fourth N. Bank is valid, in this proceeding it is also the Penn Bank, and, as against the other claimants, has no equities that the Penn Bank does not have. It is true, as was said in Rushton v. Rowe, 64 Pa. 63, that the attachment of the debt due upon a mortgage passes to the attaching creditor the right to collect the mortgage, but that is only because the attaching creditor steps into the shoes of his debtor, the mortgagee, and must collect from the garnishee through and on the terms of the mortgage by which the garnishee owes the debt to the debtor; but his attachment gives him no greater rights against the mortgagor than his debtor had.

2. Were all the notes held at the time of distribution by indorsees, their equities would unquestionably be equal, and they would all be entitled to the fund. Unquestionably, also, if the notes held by the German N. Bank and Thomas Hare, agent, had passed to them by mere delivery, and there was no liability on the part of the Penn Bank upon them, then all the notes would be entitled to share equally. But such is not this case. The Penn Bank by its indorsement assumed a liability upon the notes so held, and when it assigned its assets to Henry Warner it did so subject to the contract on the part of the bank to pay these notes, if the makers did not pay them; and when by its assignment it passed to Henry Warner its interest in the Holmes mortgage, it did so subject to its engagements and liabilities, whatever they were, upon the notes indorsed over to the German N. Bank and Thomas Hare.

3. If, therefore, the question is practically one between the indorsees of the notes and the Penn Bank, as to the distribu-

tion of a fund which will not pay all in full, is there any question that the Penn Bank will be compelled to wait until the German N. Bank and Thomas Hare, agent, have been paid? The Penn Bank having indorsed the notes to the German N. Bank and Thomas Hare, agent, before maturity and for value, thereby became surety for their payment: Daniels on Neg. Inst., § 1303; Byles on Bills, 243*. "Where a surety or a person standing in the situation of a surety for the payment of a debt, receives a security for his indemnity and to discharge such indebtedness, the principal creditor is entitled, in equity, to the full benefit of that security:" Kramer's App., 37 Pa. 71. Holding the mortgage as a security for the payment of the notes in question, and being surety upon them and insolvent, the Penn Bank cannot receive any of the proceeds of the mortgaged land until the German N. Bank and Thomas Hare, agent, have been paid in full. This principle has been distinctly recognized in Worrall's App., 41 Pa. 524, 532; Himes v. Barnitz, 8 W. 45; Erb's App., 2 P. & W. 297.

OPINION, MR. JUSTICE PAXSON:

It was decided in Donley v. Hays, 17 S. & R. 400, that where a number of bonds are secured by a mortgage, and the holder of said bonds had parted with a portion of them, retaining some himself, and the sum realized by a sale of the mortgaged premises was insufficient to pay them all in full, that distribution must be made pro rata. This principle has been recognized and followed in a number of cases. It is sufficient to mention Mohler's App., 5 Pa. 418; Perry's App., 22 Pa. 43; Hancock's App., 34 Pa. 155; Hodge's App., 84 Pa. 359. If there were nothing else in this case we would be constrained to reverse the court below and adopt the views of the master. But there is a principle involved which did not enter into any of the cases cited. The Penn Bank was indorser upon each of the notes issued by Holmes, Lafferty & Co., and which were secured by the mortgage in question. When, therefore, the Penn Bank negotiated these notes with its indorsement thereon, it occupied the position of surety to the holders.

The German National Bank of Allegheny is the holder for

value of $15,000 of these notes; Thomas Hare, agent, is also the holder for value of $15,000 more of said notes. Together they amount to more than the fund for distribution. The American Exchange National Bank held the remaining three of said notes, amounting to $20,000, as collateral security for an indebtedness of the Penn Bank. The indebtedness of the latter to the American Exchange National Bank has been fully paid out of other securities held by the latter, and the notes would have been returned to the Penn Bank but for the fact that, just prior to the assignment by the latter to Henry Warner for the benefit of its creditors, an attachment was issued in New York by the Fourth National Bank of that city, appellant, and served upon the American Exchange National Bank as garnishee of the Penn Bank. This attachment is pending in the Court of Errors and Appeals of New York, and we cannot speculate as to its result.

Such an attachment would be worthless in this state, for the well-settled rule is that the debt must be attached in the hands of the debtor; the mere evidence of the debt not being the subject of attachment. In any event I do not see how the attachment in New York can possibly result in more than the transfer of the notes in question from the garnishee bank to the attaching bank, in which case the equities of the latter would rise no higher than the equities of the Penn Bank. The equities of the American Exchange Bank would not pass to the Fourth National by operation of law or the mere transfer of the notes, for the reason, amongst others, that the Penn Bank has paid the former bank in full, and as it is no longer a creditor it has no equities. Under such circumstances the Fourth National would stand in the shoes of the Penn Bank, so that this case must be disposed of precisely as if that bank was the owner of the $20,000 of notes in question. The fact that it is now represented by its assignee for creditors does not alter the position in any degree. We have said so often that the assignee is but the representative of the assignor, standing in his shoes, enjoying his rights only, that we are almost weary of repeating it. Yet it seems as necessary to say it now as it ever was. I will refer only to two of the numerous cases that might be cited upon this point: Wright v. Wigton, 84 Pa. 163; Morris's App., 88 Pa. 368.

Opinion of the Court.

We come now to the question what is the position of the Penn Bank as a claimant upon this fund? If it had not become surety on the notes held by the German National Bank and Thomas Hare, agent, it would be clear, under Donley v. Hays and the other cases cited, that the fund would have to be distributed pro rata among all the holders of the notes, including the Penn Bank. But that it is such surety is a vital fact in the case. There was no question of a surety or a guaranty in Donley v. Hays or the other cases referred to. Yet in Mohler's Appeal and in Hancock's Appeal the fact that a guaranty of the bonds by the party selling them might affect his rights as a claimant upon a portion of them, was clearly foreshadowed. The principle adopted by the auditor that "equality is equity" is very well in its place, but it is not always adopted in distributing a fund among creditors. Such distributions are made upon equitable principles. Thus, it sometimes happens that a creditor who has a first lien is not entitled to take the fund. It was ruled in Himes v. Barnitz, 8 W. 39, that "In the appropriation of the proceeds of a sheriff's sale, though a party claimant had a prior judgment, yet, if insolvent, he shall not take the money raised, to the prejudice of another subsequent judgment creditor to whom he is bound as surety for the payment of his judgment." Why, then, should the insolvent Penn Bank, which stands as surety on the appellee's notes, take the fund which in equity and good conscience should go to the holders of those notes?

Worrall's App., 41 Pa. 524, is directly in point. The syllabus of that case, which embodies the principle decided, reads: "Though a claimant to the proceeds of a sheriff's sale of the personal property of his debtor has the prior execution, he cannot by virtue thereof, if insolvent, receive the fund to the prejudice of a subsequent execution creditor, for whose claim he was bound as the surety of the debtor, but the proceeds will be appropriated to the latter claimant." It was said by Justice WOODWARD, in delivering the opinion of the court, that it would be inequitable to permit a joint debtor who is insolvent to divert a fund from a creditor to whom he owes it, into his own irresponsible pocket. It is true, upon the face of the papers the Penn Bank is entitled to a pro rata share of the fund in question. But it is equally bound to the appel-

lees upon its indorsements.  Equity would require that the Penn Bank should hand over its share of the notes as soon as received to the appellees for whom it is surety.  Equity will apply it as it would be the duty of the Penn Bank to apply it, by handing it over directly to the appellees.

The decree is affirmed, and the appeals dismissed, at the costs of the respective appellants.

Argued November 5, 1888—Decided January 7, 1889.