the first pleading he files, the plaintiff with his petition, and the defendant with his answer, or whatever other plea by which he makes his first appearance.

The rule nisi is therefore discharged; the applicant to pay all costs.

(60 South. 25.)

No. 19,090.

In re ELLINGTON PLANTING CO., Limited.

(Nov. 4, 1912. Rehearing Denied Dec. 2, 1912.)

*(Syllabus by the Court.)*

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 215*)—RIGHTS OF ASSIGNEE OR TRUSTEE.

An assignee or trustee is the representative of the assignor, standing in his shoes, and enjoying his rights only.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 725–728; Dec. Dig. § 215.*]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 220*)—RIGHTS OF ASSIGNEE OR TRUSTEE.

An assignee cannot exercise rights which the insolvent himself does not possess.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 742–744; Dec. Dig. § 220.*]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 334*) — CLAIMS AGAINST ESTATE — PRIORITIES.

A man's property is the common pledge of his creditors. It is the common pledge which the law permits in such cases to be invaded by special privileges, such as pledges and mortgages when constituted according to law. Butler v. Clarke, 44 La. Ann. 154, 10 South. 499.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 965–971; Dec. Dig. § 334.*]

4. ASSIGNMENTS (§ 94*)—RIGHTS AND LIABILITIES OF PARTIES.

It would be contrary to good faith that the vendor of a claim, after receiving the price of it from the assignee, should, by his own act, prevent the latter from recovering the sum he has paid. Stevenson v. Short, 52 La. Ann. 967, 27 South. 350.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 162–165; Dec. Dig. § 94.*]

5. SALES (§§ 150, 262½*) — OPERATION AND EFFECT OF CONTRACT — DELIVERY — WARRANTY.

The seller is bound to two principal obligations—that of delivery and that of warranting the thing which he sells. Civil Code, art. 2475.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 350, 351, 354, 355, 356, 740–748; Dec. Dig. §§ 150, 262½.*]

6. PLEDGES (§ 23*)—NATURE OF CONTRACT—PRIORITIES.

The pawn invests the creditor with the right of causing his debt to be satisfied by privilege and in preference to the other creditors of his debtor out of the product of the movables, corporeal or incorporeal, "which had been thus burdened." Civil Code, art. 3157.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 47; Dec. Dig. § 23.*]

7. PRINCIPAL AND SURETY (§ 147*)—REMEDIES OF CREDITORS—ESTOPPEL OF SURETY.

A surety who indorses the note which he gives to his creditor as collateral security becomes a solidary codebtor, and he cannot compete with his creditor to prevent payment to the latter out of the proceeds of the property of the joint debtor. Labouisse v. Orleans Cotton Rope & Manufacturing Co., 43 La. Ann. 582, 9 South. 492; Renshaw v. Creditors, 40 La. Ann. 37, 3 South. 403; C. C. arts. 1969, 3147, 3157; Kelly v. Herrick, 131 Mass. 373; Davidson v. Carroll Hoy & Co., 23 La. Ann. 108.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 528–533; Dec. Dig. § 147.*]

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

In the matter of the liquidation of the Ellington Planting Company, Limited. From the judgment, A. G. Ricks, trustee for the creditors of John Barkley & Co., appeals. Affirmed.

Dinkelspiel, Hart & Davey, of New Orleans, for trustee A. G. Ricks. W. S. Parkerson and Stirling Parkerson, both of New Orleans, for appellees opponents Liq. State Nat. Bank. Hall, Monroe & Lemann, of New Orleans, for appellees Whitney Cent. Nat. Bank. Carroll, Henderson & Carroll, Merrick, Lewis, Gensler & Schwarz, Denegre & Blair, Henry H. Chaffe, Dufour & Dufour, W. A. Bell, Robt. J. Perkins, Dart, Kernan & Dart, and Robt. H. Marr, all of New Orleans, for parties in interest.

SOMMERVILLE, J. This is a proceeding by the liquidator in this insolvency to compel the Whitney Central National Bank and the liquidators of the State National Bank, creditors of the insolvent, to share ratably the funds in his hands, as shown on the account filed by him, with the creditors of the insolvent firm of John Barkley & Co., which firm are also creditors of the insolvent. The said banks are the holders of promissory notes of the insolvent, drawn to the order of Barkley & Co., and indorsed by them, and pledged by them to the banks long prior to the insolvency of the Ellington Company and Barkley & Co. to secure indebtednesses due by Barkley & Co. to the banks.

The parties to this suit are: First, the Ellington Planting Company, Limited, represented by James W. Martin, liquidator, appointed by the board of directors of the said company February 3, 1910, and confirmed by order of the civil district court February 21, 1910; second, the Whitney Central National Bank, which holds the promissory note of John Barkley & Co., secured by the demand note of the Ellington Planting Company, limited, which latter note was indorsed by said Barkley & Co.; third, the State National Bank in liquidation, a creditor of Barkley & Co., similarly placed to the Whitney Central National Bank; fourth, A. G. Ricks, assignee of the rights of Barkley & Co.

The Ellington Planting Company, Limited, as its name indicates, was a corporation engaged in the planting business. Its stock was owned mainly by the members of the firm of Barkley & Co. And said firm were the commission merchants of the planting company. The Ellington Company became indebted to Barkley & Co., and gave its demand note to the latter February 15, 1906, for the sum of $25,000, payable to the order of Barkley & Co.; and again on January 31, 1907, the Ellington Company gave a sim-

ilar note to Barkley & Co. for $75,000. These are the notes which were indorsed and given by Barkley & Co. to the two banks already named on their respective dates, and they are the notes in contest in this case.

In June, 1908, Barkley & Co., having become involved, obtained from their creditors an extension of time for the payment of their debts until March 1, 1909. July 9, 1909, Barkley & Co. made a voluntary assignment of all their property to A. G. Ricks for the benefit ratably of the creditors of said Barkley & Co., and the individual members of that firm, which assignment was accepted by the creditors of Barkley & Co. without judicial proceeding.

Among the creditors of Barkley & Co. were the two banks which are now before the court claiming a priority of payment over Barkley & Co. out of the funds of the Ellington Planting Company, which fund the liquidator of that company now proposes to distribute.

When the two banks agreed in writing that Barkley & Co. might assign their property to A. G. Ricks for the benefit of all the creditors of said firm, they stipulated in said agreement that:

"It is further understood that any and all creditors holding collateral or other securities for the debts due to them, or any of them, shall have the right to resort to such collaterals or other securities for the payment of their respective debts, and that such creditors shall be bound by this agreement only to the extent of any balance which may remain due after resort to such securities."

The quoted paragraph was doubtless inserted in that agreement out of an abundance of caution so as to prevent any question about the banks having abandoned the collateral securities which they held. The banks, in loaning money to Barkley & Co., exacted securities from that firm to protect themselves from loss, in the event of the insolvency of Barkley & Co. In the absence of an express abandonment and surrender of

said securities, the banks would be considered to have retained same in their full force and effect, so that they could assert prior claims over the ordinary creditors of Barkley & Co., and the securities or pledges in their possession would be worthless and misleading if they did not give the banks superior claims to these ordinary creditors of Barkley & Co.

[1, 2] On March 16, 1909, when Barkley & Co. made a voluntary and extrajudicial assignment to Mr. Ricks as trustee, the two demand notes of the Ellington Company did not pass into the possession of Mr. Ricks, trustee; they were in the possession of the banks. They formed no part of the assets of Barkley & Co. on that date, and the trustee of Barkley & Co. cannot claim any portion of the proceeds of those notes unless there is a surplus on a settlement of the Ellington Company with the banks. And counsel for the trustee on their brief admit:

"If any creditor had collateral security, that necessarily would be in his own hands, and no assignment to A. G. Ricks as trustee could affect the rights of the creditor holding same, or give Ricks possession thereof."

Again counsel say:

"Unless the Whitney Central National Bank and the State National Bank can show that they were 'creditors holding collateral or other security for the debts due to them,' the judgment of the district court is erroneous."

The banks have shown that they are creditors holding collateral securities for the debts due to them in the shape of two promissory notes of the Ellington Company, indorsed by Barkley & Co., and offered and filed in evidence in this case.

Nevertheless counsel argue:

"Mr. Ricks represents the aggregated creditors of John Barkley & Co. and claims the dividend for these creditors. John Barkley & Co. were insolvent, and it is their creditors, through their common representative, who are here demanding only that the creditors receive their ratable share of this asset of John Barkley & Co., and that it be not applied wholly to the satisfaction of the debts due to the banks to the exclusion of all of the creditors of that firm."

And they argue further that:

"While John Barkley & Co. might not contest the priority set up by the banks, the representative of all the other creditors certainly has the right to do so."

We have seen that Barkley & Co. and the individual members of that firm transferred to A. G. Ricks, as trustee, all of their property. Mr. Ricks thus became the trustee of and for Barkley & Co. and the individual members of that firm. Mr. Ricks was authorized by the several creditors of Barkley & Co. to accept the assets of that firm for their benefit, and, to that extent, he represents the creditors of that firm. He was authorized by Barkley & Co. to dispose of these assets "and to distribute the proceeds derived therefrom among the creditors of said firm as shown by their books."

Under the foregoing conditions, A. G. Ricks is in no different position from that occupied by Barkley & Co., his assignors. The notes here sued upon were not in the possession or under the control of Barkley & Co. at the time of the assignment by that firm, and Barkley & Co. did not transfer or attempt to transfer these notes. They had already passed from Barkley & Co. into the possession of the two banks which now hold them. They were transferred at a time when Barkley & Co. had the right to transfer them, and Mr. Ricks, trustee, is not assailing these transfers because of any illegality. He is claiming to share ratably in the proceeds of the property of the Ellington Planting Company, as a representative of the other creditors of Barkley & Co. It has been admitted that Barkley & Co. would not be heard to urge this claim if they were personally before the court. We are of the opinion that their trustee is in no better position than they would be if they were before the court.

"It is no new doctrine that the assignee or trustee in bankruptcy stands in the shoes of the bankrupt, and that the property in his

hands, unless otherwise provided in the bankrupt act, is subject to all the equities impressed upon it in the hands of the bankrupt. This has been the rule under former acts and is now the rule." Security Co. v. Hand, 206 U. S. 423, 27 Sup. Ct. 722, 51 L. Ed. 1117, 11 Ann. Cas. 789.

The fund now in dispute has not even passed into the hands of the trustee of Barkley & Co.; it is in the possession of the liquidator of the Ellington Company, who proposes to distribute that fund ratably between its creditors and the creditors of Barkley & Co. This situation of affairs does not require that the case be remanded and reopened so that the trustee of Barkley & Co. may go into possession of all the assets of Barkley & Co.; for the reason that the members of the firm of Barkley & Co. are the owners of the stock in the Ellington Company, and the creditors of both the Ellington Company and Barkley & Co. are before the court, or they are represented by some one authorized to appear for them.

To quote from a paragraph in the Fourth National Bank Case, substituting the words "Barkley & Co." for the words "Penn Bank" it would read as follows: It would be inequitable to permit a joint debtor, who is insolvent, to divert a fund from a creditor, to whom he owes it, into his own irresponsible pocket. It is true, upon the face of the papers, that Barkley & Co. are entitled to a pro rata share of the funds in question; but they are equally bound to the appellees upon their indorsements. Equity would require that Barkley & Co. should hand over their share of the notes as soon as received to the appellees, for whom they are sureties. Equity will apply it, as it would be the duty of Barkley & Co. to apply it, by handing it over directly to the appellees. 123 Pa. 473, 16 Atl. 779, 10 Am. St. Rep. 538.

In the case of Thompson v. Southern Saw Mill Co., 123 La. 127, 48 South. 769, we say:

"The argument that the receiver occupies a different position from that of the shipyard is without merit. The decisions cited, supra, show that creditors cannot disregard such contracts, and the receiver, as their representative, can have no greater rights.

"These contracts were entered into in good faith nearly a year before the appointment of the receiver, and soon after the shipyard company commenced business. Under such a state of facts, the receiver took the property subject to existing equities, liens, and incumbrances."

And again from the syllabus in Campbell v. Slidell, 5 La. Ann. 274:

"A syndic acquires from an insolvent no greater rights than the insolvent himself possessed."

Again in the syllabus in Nicolopulo v. His Creditors, 37 La. Ann. 472:

"Although in the absence of delivery such sales are without effect as against seizing or attaching creditors of the vendor and his bona fide transferees in possession and without notice, the vendee's title is not affected by the mere vendor's surrender in insolvency to his creditors. Such surrender only passes property belonging to the insolvent, and the syndic takes only the rights which the insolvent himself had."

The assignee or trustee of an insolvent takes the assets as a mere trustee for the creditors, not for value without notice, subject to all claims and defenses that might have been interposed as against the insolvent, such as offsets, counterclaims, or other rights and equities in favor of third persons. 4 Cyc. 218.

In Citizens' Bank v. Maureau, 37 La. Ann. 857, we say:

"His syndic, as his assignee, cannot exercise rights which he himself did not possess."

In the case of Fourth National Bank's Appeal, 123 Pa. 473, 16 Atl. 779, 10 Am. St. Rep. 538, the court there say:

"The fact that it [the bank] is now represented by its assignee for creditors does not alter the position in any degree. We have said so often that the assignee is but the representative of the assignor, standing in his shoes, en-

joying his rights only, that we are almost weary of repeating it."

[7] A. G. Ricks, trustee, standing in the shoes of Barkley & Co., administering their property for the benefit of their creditors, enjoys only the rights of that firm. The latter indorsed the notes of the Ellington Planting Company, and thereby became solidarily bound with said company to the banks to whom they transferred the notes. They transferred these notes to the banks as securities for the debts due by themselves to said banks. They could not have the notes, which they gave to these two banks as security, restored to them until the debts to said banks, which are secured, have been entirely discharged. They cannot do anything whatever to destroy or impair these notes. If the voluntary transfer or assignment of their property to Mr. Ricks as trustee gives, or attempts to give, to said Ricks the notes which said firm have pledged, the agreement or transfer is illegal, null, and void to that extent. Barkley & Co. are estopped from contesting the payment of these notes by the liquidator of the Ellington Company to the banks which hold them. C. C. arts. 3147, 3157, 1969. The trustee of Barkley & Co. is likewise estopped. Renshaw v. Creditors, 40 La. Ann. 37, 3 South. 403. "Estoppels in pais are available against parties and privies." 16 Cyc. 778. Suretyship is extinguished in the same manner as are other obligations. C. C. art. 3059.

The Whitney Central National Bank and the State National Bank in liquidation, opponents to the account of the liquidator of the Ellington Planting Company, are entitled to payment by priority over "A. G. Ricks, assignee of the rights of John Barkley & Co.," and the judgment appealed from is therefore affirmed, with costs.

See dissenting opinion of PROVOSTY, J., 60 South. 28.