Ogden W. Nine *v.* Nina R. Carskadon, *et al.*

(No. 8668)

Submitted January 31, 1939. Decided February 21, 1939.

*Poffenbarger & Poffenbarger,* for appellants.

*Martin, Seibert & Beall,* for appellee Ogden W. Nine.

*Emory Tyler,* for appellee, executor of the estate of F. M. Reynolds, deceased.

*Harry K. Drane,* for appellee George S. Arnold, receiver.

Maxwell, Judge:

This case is subsidiary to the case of *Emory Tyler, Ex'r., et al.,* v. *E. B. Reynolds, et al.,* 120 W. Va. 232, 197 S. E. 735, decided June 14, 1938.

The purpose of this suit is to (1) determine the ownership of certain bonds; (2) ascertain their priority, if any; (3) and direct a sale of the property under the deed of trust which was given as security for the bonds.

From a decree adverse to their contention respecting ownership, the defendants, E. B. Reynolds, one of the executors of the last will and testament of F. M. Reynolds, deceased, and E. B. Reynolds and G. H. Reynolds, devisees under the last will of F. M. Reynolds, deceased, obtained this appeal. The plaintiff, Ogden W. Nine, cross-assigns error in respect of the chancellor's finding as to the priority affecting certain of the bonds.

The bonds here under consideration are twenty-four in number and each is in the principal sum of $1,000.00. They constitute the first series of bonds secured by a deed of trust executed by Nina Reynolds Carskadon and Luther T. Carskadon, her husband, March 20, 1920. The second series of $10,000.00, and the third series of $22,000.00, both subordinate to the first series, are not involved in this case.

Ten bonds of the first series are held by the executors of the estate of F. M. Reynolds, deceased; five are owned and held by the plaintiff, Ogden W. Nine, and nine are in the custody of the receiver of the First National Bank of Keyser as collateral for a note of $25,000.00 which was executed by F. M. Reynolds. The position of the nine bonds as collateral was determined by this court under Item Four of the opinion in the case of *Tyler, Ex'r.* v. *Reynolds, et al., supra.* There it was adjudicated that the nine bonds are lawfully held by the bank. The decision under that item is *res judicata* of the only question of ownership herein presented.

Respecting status, the circuit court held that the three stated groups of the first series of bonds stand on a parity with each other. The plaintiff cross-assigns error, asserting that his five bonds should be held to have priority over both the group of nine held by the bank and the group of ten in custody of the executors. The bank urges that Nine should not be given preference over it, and that if any priorities are to be decreed, the bank and Nine should be placed on equal footing in priority over the Reynolds estate.

Following the execution of the deed of trust March 20, 1920, Judge Reynolds (F. M. Reynolds) seems to have exercised control of the bonds executed by the Carskadons and secured by the trust. This is certainly true as to the first series, and respecting the second and third series we are not here concerned. Soon after the execution of the deed of trust, the first series of bonds, payable to bearer and endorsed by Judge Reynolds, was negotiated by him. Fourteen of the bonds were sold to the First National Bank of Keyser and ten of them to other banking institutions. Details of the transactions respecting the group of ten bonds are not clear, nor are they important. Suffice to say that sometime before his death in 1931, this group of ten bonds came back into his possession, and was found among his papers after his death.

Late in the year 1920, the national banking authorities disapproved the investment which had been made by the First National Bank of Keyser in the fourteen bonds mentioned. The bank, thus finding it necessary to dispose of these bonds, sold them to Judge Reynolds in January, 1921. For five of the bonds he paid in cash $5,225.00 out of funds in his hands as testamentary trustee for Carl G. Nine, father of Ogden W. Nine. For the other nine bonds, making up the group of fourteen held by the bank, Judge Reynolds gave to the bank his note for $9,000.00. Carl G. Nine is dead, and his son, Ogden W. Nine, has come into ownership of the trust fund, free of the trust.

Thus is presented the background of the problem respecting the status of each of the three groups constituting the first series. Are the three groups on a parity as adjudged by the circuit court, or must priorities be declared?

In seeking an answer to the problem, primary anchorage must be made to the proposition that Judge Reynolds used and dealt with these twenty-four bonds as their owner, though the record does not conclusively show whether he was in fact the owner or whether he acted as agent for his daughter in making the original

disposal of these bonds. Certain it is that after the bonds had been sold by him in 1920, they all came back into his custody and control, nineteen of them in his actual, unqualified, individual ownership, and five into his possession as trustee of the Nine estate. The date when the ten bonds, which had been sold to other banking institutions, came back to Judge Reynolds is not clear. The time was probably about 1925, but the date is inconsequential. The controlling fact is that the bonds did return to him and into his personal ownership. These ten bonds, remaining in his custody and ownership until the day of his death, cannot be given equal standing with either the group which he purchased for the Nine estate or the group which he delivered to the bank a few months before his death as collateral security for the large note which he owed the bank.

In dealing with these bonds, payable to bearer, Judge Reynolds stood as though he were the named payee, and the owner and holder thereof. His endorsement accentuated that situation. Where a holder of a series of notes parts with some of them, endorsed by him, he becomes a surety to the assignees and equity will not permit him or his estate to assert equality of the notes not negotiated with the ones which were negotiated. *Fourth National Bank's Appeal,* 123 Pa. 473, 16 A. 779, 10 Am. St. Rep. 538.

The group of ten bonds having come to, and remained in, the ownership and control of Judge Reynolds as stated, there arises for consideration the fact of the two assignments made by him of separate groups of bonds: first, the assignment in 1921 of five bonds to the Nine estate; and, second, assignment of nine bonds to the First National Bank in 1931. Not only must these two groups have preference over the ten bonds held by the executors, but of the two groups assigned the first in order of time must have priority. Such is the rule in this state, also in Virginia and in a few other states. *Thomas* v. *Linn,* 40 W. Va. 122, 20 S. E. 878; *Jenkins* v. *Hawkins,* 34 W. Va. 799, 12 S. E. 1090; *Gordon* v. *Fitzhugh,* 68 Va. 835, 27 Gratt. 835; *McClintic* v. *Wise's Adm'r.,* 66 Va. 488, 25 Gratt. 448. Con-

sult annotations, 50 A. L. R. 569, 574, and 42 L. R. A. (N. S.) 183, 206.

The mere fact that bonds or notes are payable to bearer does not create an exception to the prior-assignment rule. Where there is an issue of bonds for sale to the public and it is desired that all bonds stand on equal footing, without priority because of time of assignment, such result can readily be obtained by specific provision in the mortgage or deed of trust securing the indebtedness. There is no such provision in the deed of trust which secures the bonds at bar.

For the reasons set forth, we affirm the decree of the circuit court as to all features except in respect of the priorities pertaining to the three groups of the first series bonds, and in that particular we reverse the decree. The cause is remanded for further proceedings in accord herewith.

*Affirmed in part; reversed in part; remanded.*