# Worrall's Appeal.

*Sheriff's Sale.—Equitable Distribution of Proceeds.—Subrogation of subsequent Execution-Creditor to rights of prior Creditor when the latter is Surety for the Claim of the former.*

Though a claimant to the proceeds of a sheriff's sale of the personal property of his debtor, has the prior execution, he cannot by virtue thereof, if insolvent, receive the fund to the prejudice of a subsequent execution-creditor, for whose claim he was bound as the surety of the debtor, but the proceeds will be appropriated to the latter claimant.

CERTIORARI to the Common Pleas of Philadelphia.

This was an appeal by William P. Worrall, from the decree of the court distributing the proceeds of the sheriff's sale of the personal property of Washington M. Worrall.

[Worrall's Appeal.]

The following are the material facts of the case :—

Washington M. Worrall, as principal, and William P. Worrall, as surety, became bound to William C. Richardson and James O. Pease, by bond dated the 1st day of March 1859, in the sum of $4903, conditioned for the payment of $2451.52. They also became bound in the same way to the same parties, in a bond dated the 15th day of February 1859, in the sum of $5205.72, conditioned for the payment of $2652.72. On both of which bonds judgments were duly entered in the Court of Common Pleas of Delaware county, on the 21st day of June 1859.

On the 25th day of August 1859, transcripts of the above judgments were filed in the District Court for the city and county of Philadelphia, being Nos. 412 June Term 1859, and 408 June Term 1859, D. S. B., respectively, and judgments duly entered thereon.

On the 13th day of July, A. D. 1859, Washington M. Worrall executed a bond in favour of William P. Worrall, for the sum of $19,342.96, conditioned for the payment of the sum of $9671.48, upon which judgment was entered under the warrant of attorney accompanying it on the 3d day of August 1859, in the District Court of Philadelphia, being No. 309 June Term 1859, D. S. B.

The consideration of the bond last named was, first, to secure to William P. Worrall such sums of money as Washington M. Worrall owed William P. Worrall for advances already made; and, second, for such liabilities as had been assumed by William P. Worrall for Washington M. Worrall, and among them such as were liens upon the real estate of William P. Worrall, in Delaware county.

| | |
|---|---:|
| Washington M. Worrall owed to William P. Worrall at that time . . . . . | $850.00 |
| With interest from December 1st 1854, to August 1st 1859 ·. . . . . . | 218.00 |
| | $1068.00 |
| On which payments had been made amounting to . | 246.00 |
| Leaving due on this account . . . | $822.00 |
| William P. Worrall had become bound for a debt due by W. M. Worrall to Fry & Carson (which has been collected out of W. P. Worrall's property by execution), for . . . . . | $201.22 |

And had become bound, as hereinbefore stated, to Richardson & Pease, for the debt of W. M. Worrall, for $2451.52, and also for $2652.72, and upon the judgment of Richardson & Pease they

[Worrall's Appeal.]

had realized out of the real estate of W. P. Worrall by sheriff's sale in Delaware county, made subsequent to the sale of personal property by which this fund was raised, the sum of  .   .   .   $998.12

The amount therefore due to W. P. Worrall by W. M. Worrall, and to indemnify him against which the judgment No. 309, June Term 1859, was given by W. M. Worrall to W. P. Worrall, was  .   .   $2021.34

In addition to these sums, William P. Worrall was bound for other debts of Washington M. Worrall, which have not been paid, and which with the amount of the debts to Fry & Carson, and to Richardson & Pease, mentioned above, were equal in amount to the bond given by Washington M. Worrall to William P. Worrall, and these were the debts against which to indemnify him this bond was given him by Washington M. Worrall, as above stated.

William P. Worrall, on the 3d day of August 1859, was and is still insolvent.

On the 3d day of August 1859, a *fi. fa.* was issued out of the District Court of Philadelphia, being No. 18 September Term 1859, upon the judgment and in favour of W. P. Worrall, against W. M. Worrall (D. S. B. J. 1859, 309, for $19,342.96), endorsed Real Debt $9671.48, which judgment was upon the bond which had been given as above stated, by W. M. Worrall to W. P. Worrall, and the said *fi. fa.* was placed in the hands of the sheriff of Philadelphia, on that day.

On the 25th day of August 1859, a *fi. fa.* was issued out of the District Court of Philadelphia, being No. 131 September Term 1859, upon the judgment and in favour of William C. Richardson and James O. Pease, against W. M. Worrall and W. P. Worrall (D. S. B. J. 1859, 408, for $5205.72), endorsed Real Debt $2652.72, which judgment was entered upon the bond, which was given, as above stated, by Washington M. Worrall and William P. Worrall, to Richardson & Pease; and the *fi. fa.* placed in the hands of the sheriff of Philadelphia on that day.

The sheriff of Philadelphia levied upon the personal property of Washington M. Worrall, on the 3d day of August, A. D. 1859, under the *fi. fa.* of William P. Worrall, No. 18 September Term 1859; and on the 25th of August 1859, he also levied the *fi. fa.* in favour of Richardson & Pease against W. M. Worrall and W. P. Worrall, No. 131 September T. 1859, upon the same personal property, subject to the first levy, and sold the same on the 27th of August 1859, and the fund which the auditor was appointed to distribute arose from and was the proceeds of that sale.

[Worrall's Appeal.]

The net proceeds were $1241, to distribute which the court appointed Jacob Broom, Esq.

By agreement of counsel, the sum of $200 was awarded to Claghorn & Fryer, who had an execution against Wallace M. B. Ball and Washington M. Worrall, surviving partners of Elisha C. Diehl, doing business as Ball, Worrall & Co.

There being no evidence before the auditor of fraud, or that the goods levied on and sold were other than the property of Washington M. Worrall, he awarded the whole of the balance to William P. Worrall, the first execution-creditor.

To this report exceptions were filed for William C. Richardson and James O. Pease.

On hearing, the court below (HARE, J.) delivered the following opinion :—

"Securities given by a principal debtor, as an indemnity against the debt, to those who have become jointly bound with him as sureties for its payment, have sometimes been said to be trusts for the creditor. If this were so, it would follow that they could not be returned to the principal, without applying to the creditor, and obtaining his consent to the surrender; a conclusion so extreme as to show that the principle which leads to it must be an error. But while such securities are not in any just sense of the word trusts, unless made so expressly, they are, notwithstanding, charged with duties and obligations which may render it necessary to award them to the creditor, as the only means of doing justice between the principal and the surety. For although the surety may, under ordinary circumstances, consent that they shall be applied to other debts of the principal, instead of that which they were meant to secure, or the principal release all claim upon them in favour of the surety, without giving any just ground of complaint to the creditor; this is true only so long as the parties are solvent, and the securities remain in the hands of the parties, and subject to their disposition, and ceases to be so when they are turned into a fund for the payment of debts by an assignment or execution. The duty of appropriating them then devolves on the law, which will act with due regard to the claims both of the principal and the surety, and not suffer the fund to be diverted from the debt, in which they have a common interest, to any collateral purpose. To borrow an illustration from mechanics—the case is, then, that of a body impelled by two forces, which cannot pursue the direction of either without conflict with the other, and must therefore move in that of their resultant, which will conduct it directly to the pocket of the creditor. This will be apparent on referring to the decision of Judge Cadwalader, in the case of Winter v. Ludlow, where the cases are examined and methodized with a fulness and precision which will leave the reader little to learn by extending his researches in other quarters.

[Worrall's Appeal.]

"It is a necessary consequence of these principles that where land, bound by a judgment given as an indemnity, is sold under a subsequent judgment against the principal, the proceeds cannot be awarded to the surety without prejudicing the principal, who would be deprived of the means of paying the debt, nor to the principal or the plaintiff in the subsequent judgment without depriving the surety of his indemnity, and must be applied to the payment of the debt for which the surety has made himself answerable, as the only mode of disposing of them consistent with equity. If, therefore, the contest here lay solely between a judgment obtained against A. and B. for a debt due by A. as principal, and B. as surety, and a prior judgment given by A. to B., as a protection against the debt, B. could not turn the judgment held by him from its true object, and use it as a means of preventing the satisfaction of an obligation which he was bound to fulfil. But the peculiarity of the case is, that B.'s judgment was given not only as an indemnity for the debt which he owed jointly with A., but also for a debt which A. owed to him, and it is said that so far as this latter debt is concerned he is free from any equity, and may use his prior lien as a means of obtaining payment. It, however, plain that a man who sets up a lien or hold on the land of another, as a reason why it should not go to the payment of a debt for which they are both jointly bound, sins against the principles of justice, which require that all rights which are, or partake of the nature of rights of property, should be used for the purpose of satisfying, and not of preventing the satisfaction of the debts of those who hold them. That property which has been taken in execution under a judgment against two defendants belongs to both of them, is obviously no reason why the proceeds should not be paid to the creditor, and the case is substantially the same when one of the defendants holds a lien or encumbrance on the property in question, and the other its body or *corpus,* unless the circumstance that the right of the former is less, puts him in a better position than if it were greater, and exonerates him from the operation of the principle that rights are to be postponed to duties and obligations. And no court should permit a defendant to say to a plaintiff, it is true, I owe you the money for which you have obtained judgment against me, and also true that you have levied on the effects of my co-defendant, who also owes it, but I have a prior lien on those effects for another debt, and will use it, not to facilitate the levy, but to defeat it *pro tanto,* or altogether, by diverting the proceeds from your pocket to my own, where they will be, and perhaps remain beyond the reach of any remedy that the law can give you. But it is unnecessary to examine the question on principle, because the cases of Erb's Appeal, 2 Penna. R. 296, and Heims *v.* Barnitz, 8 Watts 39, only differ from that

now before us in the fact that the first judgment was originally obtained and held by a third person, by whom it might unquestionably have been enforced to the exclusion of the second; and the decision of the court that it lost its priority by passing into the hands of one of the defendants in the second judgment, and could not be used by him for the purpose of preventing the collection of the debt out of the property bound by its lien, applies *à fortiori* in the present instance, where the elder judgment was designed in part as an indemnity against the obligation of the younger.

" The exceptions to the report of the auditor are sustained, and the balance of the fund in court awarded to William C. Richardson and James O. Pease, as being the parties equitably entitled to it."

The case was then removed into this court, where the following errors were assigned :—

1. The learned court erred in awarding the balance of the fund to Richardson & Pease.

2. In not awarding the fund to William P. Worrall, the appellant.

*Otterson,* for appellant.—The contest  · etween two execution-creditors, wherein both plaintiff and defendant in the first writ are joint defendants in the second; and wherein, by the admission of all parties, there is an entire absence of fraud.

The defendant in the first writ gave an amicable judgment to the plaintiff for three separate objects : 1st. To secure to plaintiff the repayment of money already loaned and advanced by him on defendant's account. When that was accomplished, then, 2d. To secure the plaintiff against endorsements made by him on behalf of the defendant; and then, 3d. To secure the balance which might be made by sale to the other creditors of defendant. Appellant, therefore, became a trustee for the two latter purposes mentioned.

There were then two executions levied upon the personal property of Washington M. Worrall, of which the appellant's was first by twenty-two days.

The proceeds of the sale were not enough to satisfy the first of the three purposes for which the first judgment was given, for there is due from Washington to William P. Worrall $2021.34, while the balance for distribution is only $1241.

The case is precisely the same as if appellant had taken three separate judgments for the three separate objects mentioned, and had proceeded only on the first; or one judgment for the money he was actually out of pocket : and therefore the principles invoked by the court below in the determination of the case are inapplicable. It is not pretended that the fund for distribution was raised out of any security which had been placed in appel-

5 WR.—34

lant's hands by W. M. Worrall, to indemnify him against his position as surety; and therefore the cases of Erb's Appeal, Heims *v.* Barnitz, and Winter *v.* Ludlow, cited by the court, cannot influence the case.

In distributing the proceeds of the sale of the personal property of Washington M. Worrall, is it enough to deprive appellant's writ of its twenty-two days' priority, to say that the appellant was a defendant in appellee's writ? Is the writ of Richardson any more operative as against the property of W. M. Worrall, because W. P. Worrall is a co-defendant, as to whom the sheriff returns "*nulla bona?*" The law is, that the earliest writ has priority as to personal property. This is subject to qualification, when there is collusion between the plaintiff in the earlier writ and the defendant. The fraud takes away the priority. Is it necessary that circumstances like the present should extend the qualification? The writ of the appellant was fully operative, but the judgment of the court below renders it a nullity, and for no fraud or irregularity whatever, nor because appellant was one of the defendants in appellee's writ. It ignores appellant's priority as against the property of W. M. Worrall, on the one hand, while on the other, in the pursuit of a claim against W. P. Worrall, it gives appellees all the advantages of an attachment upon an ordinary *fi. fa.* As against W. M. Worrall's property, his execution is *second,* and must be postponed; as against W. P. Worrall, he cannot take at all out of W. M. Worrall's property, upon a *fi. fa.*

Nor have the appellees any equity which entitles them to priority. The appellant claims the right of distributing his own assets among his creditors in his own way, unless the law clearly puts the same out of his power. The appellees purpose availing themselves of a preference to which it is urged they have no legal right.

*John C. Bullitt,* for appellee.—The case is controlled by the established principle in equity, that when two persons become jointly bound to a third person, one as surety to the other, and the principal debtor gives to the surety any securities for indemnity to him against such obligation, then, in case of the insolvency of the joint obligors, the "creditor is entitled to all the securities taken by the surety of his debtor, either for the purpose of securing the payment of the debt to the creditor, or for the purpose of indemnifying himself against the payment of it:" Story's Eq. Jur. vol. 1, p. 569; Cornwell's Appeal, 7 W. & S. 308; Himes *v.* Barnitz, 8 Watts 45; Erb's Appeal, 2 Penna. R. 297; Moore's Appeal, 7 W. & S. 298; Maure *v.* Harrison, 1 Eq. Cas. Abr. 93; Wright *v.* Morley, 11 Ves. 12.

Should this fund be awarded to the appellees, the appellant

[Worrall's Appeal.]

suffers no injury, because the fund goes to pay his debt to the appellees. But if awarded to the appellant the appellees will be injured, as it deprives them of a legal right to the money raised by the sale, and subject to distribution by the court. No other mode can be adopted by which to work out the equity of the appellees. William P. Worrall is insolvent. If awarded to him, the appellees inevitably lose the whole amount. Equity avoids circuity of action when it can reach directly what might be done indirectly.

The appellees have a right to compel William P. Worrall to pay this money to them, even if he had received it. The court have merely to do what could be reached by another but circuitous mode.

William P. Worrall is estopped by his position as defendant in the appellees' execution, from denying their right to the money raised by a sale under it.

The opinion of the court was delivered, February 17th 1862, by

WOODWARD, J.—W. P. Worrall having bound himself as surety for the debt of W. M. Worrall to Richardson & Pease, took a judgment against his principal, Wm. M. Worrall, for an amount of actual indebtedness, and for his indemnity against this and other liabilities, which he had assumed for the benefit of W. M. Worrall. On this judgment W. P. Worrall issued a *fi. fa.* August 3d 1859, and levied it on the goods of W. M. Worrall.

The instrument of suretyship given by W. P. Worrall to Richardson & Pease was a joint judgment against himself and W. M. Worrall, and on this judgment a *fi. fa.* was issued August 25th 1859, and levied on the same goods of W. M. Worrall as the prior writ above named. The goods were sold under both writs, and the question is, to which of them shall the proceeds of sale be applied? It is part of the case that W. P. Worrall was insolvent on the 3d August 1859, and still is.

The auditor awarded the money to W. P. Worrall, on account of the priority of his execution, but the court reversed the auditor's distribution, and gave the money to Richardson & Pease. The reasons of the learned judge are satisfactory to us. His ruling is justified by the principle that was asserted in Erb's Appeal, 2 Penna. R. 296, and in Himes *v.* Barnitz, 8 Watts 39. The funds for distribution in these cases arose from sales of real estate: in this case the fund is raised from personalty, but this circumstance cannot affect the application of the equitable principle which forbids a joint debtor, who is insolvent, to divert a fund from a creditor to whom he owes it, into his own irresponsible pocket. True, W. P. Worrall's prior lien on the goods was a legal right, superior to any right which Richardson & Pease

acquired to the goods. But their right to demand the debt of W. P. Worrall was as legal and complete as his right to the proceeds of sale. The money is here for distribution, and equity will take notice of the legal rights of both parties. It will not overlook the fact that W. P. Worrall is attempting to intercept the fund by means of a judgment and execution, which were, in part at least, his indemnity against this very claim of Richardson & Pease, and that if the fund be awarded to him, it will, by reason of his insolvency, be lost to Richardson & Pease. To enforce his right under such circumstances, to the defeat of his obligation, would be inequitable and unjust. He is no better entitled to receive the fruits of the sale than he is bound to pay them over to Richardson & Pease. As it would be equitable for him to hand over the money to Richardson & Pease as soon as it should come into his hands, equity will take care to secure this result by not letting the money go into his hands at all, but will dispose of it as it would be his duty to apply it.

The decree is affirmed.