# Barkley's Assigned Estate.

*Mortgage — Judgment notes — Priorities — Proceeds of sale of mortgaged premises—Assignment of notes—Preëxisting debt—Volunteer—Consideration—Estoppel.*

1. Where a mortgage was given to secure purchase money, and at the same time fifteen judgment notes were given as collateral security for payment of deferred installments provided for in the mortgage, and the mortgage was recorded and the notes entered up on the same day, and, thereafter, the mortgagee assigned three of the judgments to his sister-in-law with whom he stood in a relation of confidence, and to whom he owed a note to the amount of the three judgments, which note was then destroyed, with the full understanding by the sister that she was secured and would be paid, and thereafter the other twelve notes were assigned to a trust company, the sister is entitled to a preference in the distribution of a fund raised by a sale of the mortgaged premises, insufficient to pay all the fifteen notes, where it appears that the notes assigned to the trust company were to secure a preëxisting debt, without any additional consideration, or extension of credit, from the trust company to the assignor.

2. The mortgagee's representation to his sister-in-law that the judgments assigned to her would be paid, inducing her to permit the note to be destroyed, would estop him from denying her the right of a preference, and the trust company, being a mere volunteer, has no higher rights.

Argued September 28, 1920. Appeal, No. 24, Oct. T., 1920, by the Cambria Trust Co., from order of C. P. Cambria Co., dismissing exceptions to auditor's report in the assigned estate of Clyde R. Barkley. Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Exceptions to report of Walter E. Glass, Esq., auditor. Before STEPHENS, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. The Cambria Trust Co. appealed.

*Error assigned* was order dismissing exceptions, and decree, quoting them.

*R. Edgar Leahey,* with him *Harry Doerr,* for appellant.—The net proceeds of sale of the mortgaged premises were distributable pro rata amongst the said assignees: Donley et al. v. Hays, 17 S. & R. 400; Perry's App., 22 Pa. 43; Moore's App., 92 Pa. 309; Hancock's App., 34 Pa. 155; Ross & Co.'s App., 106 Pa. 82; McLean & Jackson's App., 103 Pa. 255.

*James A. Graham,* of *Graham & Yost,* for appellee.— The superior equities are in favor of the appellee: Ayers v. Watson, 57 Pa. 360.

Appellant is estopped from claiming pro rata distribution: Cowden's Est., 1 Pa. 267; Perry's App., 22 Pa. 43; Mohler's App., 5 Pa. 418; Hancock's App., 34 Pa. 155; Patrick's App., 105 Pa. 356; Fourth Nat. Bank's App., 123 Pa. 473; Wilson v. Ott, 173 Pa. 253.

OPINION BY MR. CHIEF JUSTICE BROWN, December 31, 1920:

On November 1, 1912, Clyde R. Barkley and John F. Sharpe purchased certain real estate from Lewis A. Sible, the vendees assuming a first mortgage against the property and securing to the vendor the balance of the purchase money by the execution of a mortgage, dated the same day, in the sum of $15,000, $1,000 payable November 1, 1913, and $1,000 on the same day in each of the subsequent fourteen years. At the same time Barkley and Sharpe executed and delivered to Sible fifteen judgment notes, each in the sum of $1,000, as collateral security for the annual payments provided for in the mortgage. Sharpe subsequently conveyed his interest in the property to Barkley. The mortgage was recorded November 4, 1912, and on the same day judgments in favor of Sible were entered on the fifteen notes given him by Barkley and Sharpe. On the day they were entered Sible assigned three of them to Lizzie Sharpe, the appellee, in payment of a note of $3,000 which she held against him. On November 19, 1914, he assigned to the Cambria Trust Company the mortgage and the twelve remaining judgments, and these assignments were duly recorded. In 1917 Barkley executed a deed of assignment for the benefit of creditors. The real estate mortgaged by him and Sharpe to Sible was sold by the assignee, and the fund arising from the sale of the property, after the payment of the first mortgage, costs and expenses, amounted to $6,069.92. The auditor appointed to make distribution of this fund awarded $3,190.80 to Lizzie Sharpe, in full payment of her three judgments, with interest thereon, and the balance, $2,879.12, was awarded to the Cambria Trust Company on the twelve judgments held by it. The report of the auditor was absolutely confirmed by the court below, and there followed this appeal by the trust company, its complaint being that the fund before the auditor should have been

distributed pro rata on the fifteen judgments, without preference to the appellee. If nothing more had appeared before the auditor than the foregoing facts, taken from the records, the appellee would not have been entitled to the preference, and the fund would have been distributable in accordance with the contention of the appellant, under the rule that when fractional parts of the same mortgage debt, or of a judgment lien, are successively assigned to different persons, and the proceeds of the property bound thereby are insufficient to pay all of them, they take pro rata, as the first assignment is not entitled to priority of payment: Donley et al. v. Hays, 17 S. & R. 400; Perry's App., 22 Pa. 43; Moore's App., 92 Pa. 309; Patrick's App., 105 Pa. 356.

The records did not disclose material facts found by the auditor, to which no exceptions were filed and which are not assigned as error. They are, therefore, conclusive, and we proceed to state them. Lizzie Sharpe is the sister-in-law of Lewis A. Sible. In April, 1906, she sold to him certain real estate, part of which she had inherited from her mother, and took from him in payment of the purchase money his judgment note for $3,000. In view of the relations existing between them, Sible retained possession of this note, and judgment was not entered upon it. On November 4, 1912, as appears from the records, he assigned to her three of the fifteen judgments which he held against Barkley and Sharpe, and destroyed the note for $3,000 which she held against him. There was a continued relation of confidence between him and his sister-in-law, and she took his advice in business matters. He wanted the money which he owed her to be secured to her. He wished to be sure she would be paid in any event. Before assigning the three judgments to her he consulted his attorney, as his purpose in making the assignment was to make sure that the appellee would be paid. At the time he assigned the judgment to her he represented to her that she was secured

and would be paid. This is what was understood between them at the time, and she relied upon what he represented to her. His conduct in inducing her to permit the destruction of the note which he had given her, and to accept the assignment of the three judgments, amounted to a representation by him that the judgments would be paid. In view of these findings, the correct conclusion of the auditor was that, if Sible were still the holder of the twelve judgments assigned to the appellant, he would be estopped from denying the right of the appellee to claim a preference out of the fund for distribution. Is the right of the Cambria Trust Company any higher than his? Answer to this is found in another unchallenged finding by the auditor.

Sible assigned the twelve judgments to the trust company as collateral for his endorsements of notes of Barkley and the Sible Drug Company, which the trust company held at the time of the assignments. No consideration passed for them; the trust company did not extend to Barkley or the Sible Drug Company any additional credit, and it did not advance to either of them any money or part with any security, remedy or right which it had. From the foregoing finding it is clear that the trust company stands, as to the appellee, just where Sible would stand if he were still the owner of the twelve judgments, and as he could not deny the right of the appellee to be first paid, the appellant cannot ask for a pro rata distribution. It is a mere volunteer standing in his shoes.

Appeal dismissed at the costs of the appellant.