## North City Trust Company Case.

Argued April 19, 1937.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Edwin J. McDermott,* with him *Horace M. Barba,* and *Gerald F. Flood,* Special Deputy Attorneys General, *Willis Daniels,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellant.

*James S. Clifford, Jr.*, with him *MacCoy, Brittain, Evans & Lewis*, for appellee.

OPINION BY MR. JUSTICE BARNES, October 8, 1937:

The question presented by this appeal is whether a claimant is entitled to a preference in the distribution of the proceeds of an insurance trust, which was held as collateral security by the North City Trust Company. The issue arises upon the audit of the account of the Secretary of Banking, as receiver for the institution mentioned. The only question before us is one of law, as the facts are not in dispute.

Frank H. Schrenk, the president of the trust company, by deed dated April 18, 1931, created an insurance trust, naming the trust company as trustee. He delivered to his trustee policies of insurance upon his life, having a face value of $65,000. The deed provided that the proceeds from the policies upon collection, should be distributed by the trustee as follows: (1) To pay settlor's indebtedness to the North City Trust Company. (2) To pay an indebtedness of $10,000 owing by settlor to T. Bromley Flood. (3) To pay settlor's indebtedness to John A. Fischer and Edward P. Loughran, save that from such payments there were to be deducted and paid to the trust company whatever sums Loughran and Fischer might owe to it. (4) To pay the balance remaining, if any, to Jean R. Schrenk, wife of settlor.

Schrenk died on September 29, 1931, and on the following day the Secretary of Banking took possession of North City Trust Company. Thereafter, the Secretary, as trustee, collected the insurance called for by the policies, amounting to $63,267.32.

At his death Schrenk's indebtedness to the trust company was in the sum of $40,050, represented by three notes; viz., a promissory note for $22,000, a demand collateral note with a balance due thereon of $17,300 and a demand note of $750. He also owed to Flood and Fischer the sums of $10,000 each, and to Loughran his

debt was $12,500. His total obligations, therefore, to persons named in the deed of trust were in excess of $72,000. The trust company had hypothecated and pledged with the Federal Reserve Bank in Philadelphia the two Schrenk notes for $17,300 and $750, respectively, a Loughran note for $15,000 and the two Fischer notes aggregating $3,115.

The secretary made payments in distribution of the trust fund to the beneficiaries, in the order in which they are named in the deed of trust. Accordingly he applied $22,750 in payment of Schrenk's indebtedness to the trust company, and paid off the $17,300 note at the Federal Reserve Bank, which had been reduced by liquidation of collateral to $14,752.81.

Subsequently, when the account of the secretary, as trustee, was audited by the Orphans' Court for Philadelphia County, the interpretation placed upon the deed of trust by the secretary was rejected by the court, which decided that a pro rata distribution among the named beneficiaries was intended by the settlor. In consequence, as the claims exceeded the net fund for distribution, each distributive share, entitled to participate in the fund, was awarded a dividend of .7182238 per cent only (Schrenk's Estate, 22 D. & C. 322).

Thereupon the secretary requested the Federal Reserve Bank to refund to him the sum of $4,425.84, that amount being the overpayment of approximately 30% made to the Federal Reserve Bank upon the Schrenk note. This repayment was promptly made.

When the present account of the secretary, as receiver of the trust company, was filed in the Common Pleas Court, the Reserve Bank excepted to the account, assigning the following reasons: (1) that the secretary had improperly required it to refund the alleged overpayment of $4,425.84, inasmuch as it was entitled to a full priority in the distribution of the fund; (2) that it is entitled to share in the distribution of the fund with respect to the Loughran note, the two Fischer notes

and the remaining Schrenk note, in accordance with the terms of the trust deed.

After hearing, adjudication, and argument upon exceptions before the court in banc, the court below sustained the exceptions of the Reserve Bank. It decided that the refund of $4,425.84 should be repaid to the bank, and further decreed that the secretary, as receiver for the trust company, was not entitled to participate in the proceeds of the fund until the indebtedness represented by the Schrenk, Loughran and Fischer notes, hypothecated by the trust company with Reserve Bank, had been discharged and paid in full. In other words, it awarded priority of payment to the Reserve Bank upon the notes of the persons named, which it held as pledgee of the trust company, to the amount authorized by the trust deed.

The secretary has appealed from that decree contending that the notes held by the trust company are entitled to share pro rata with those held by the Reserve Bank in the proceeds of the collateral. In support of his position he relies upon the principle established by *Donley v. Hays,* 17 S. & R. 400, *Mohler's Appeal,* 5 Pa. 418, *Perry's Appeal,* 22 Pa. 43, and *Hancock's Appeal,* 34 Pa. 155, that, where fractional parts of the same obligation are assigned to different persons, and the proceeds realized from collateral security are insufficient to satisfy the claims of all the assignees, the assignees share in the security pro rata.

While we agree that the general rule governing the equitable distribution of insufficient collateral is that all creditors whose claims are on a parity share in the proceeds of such collateral pro rata, that principle is without force when the claims are not upon a parity: *Barkley's Estate,* 268 Pa. 370. Here it has no application for the reason that as assignee of the insolvent trust company and its creditor in a large sum, the right of the Reserve Bank is superior to the right of the trust

company, or of any one claiming through the trust company in the fund realized from the collateral.

It is well settled that where the proceeds of collateral are insufficient to pay the obligations secured thereby, the holder of a portion of such obligations is entitled to the proceeds thereof, to the exclusion of his insolvent pledgor, who is liable over to such pledgee: *Erb's Appeal*, 2 P. & W. 296; *Himes v. Barnitz*, 8 Watts 39; *Worrall's Appeal*, 41 Pa. 524; *Fourth National Bank's Appeal*, 123 Pa. 473. The rule is based upon equitable considerations to prevent injustice and avoid circuity of action. As we said in *Worrall's Appeal*, supra, at page 531, ". . . in this case the fund is raised from personalty, but this circumstance cannot effect the application of the equitable principle which forbids a joint debtor, who is insolvent, to divert a fund from a creditor to whom he owes it, into his own irresponsible pocket."

Our decision in *Fourth National Bank's Appeal*, supra, is to the same effect. There in stating the principle we said, at page 486, "The principle adopted by the auditor that 'equality is equity' is very well in its place, but it is not always adopted in distributing a fund among creditors. Such distributions are made upon equitable principles. Thus, it sometimes happens that a creditor who has a first lien is not entitled to take the fund. It was ruled in *Himes v. Barnitz*, 8 W. 39, that 'In the appropriation of the proceeds of a sheriff's sale, though a party claimant had a prior judgment, yet, if insolvent, he shall not take the money raised, to the prejudice of another subsequent judgment creditor to whom he is bound as surety for the payment of his judgment.' Why, then, should the insolvent Penn Bank, which stands as surety on the appellee's notes, take the fund which in equity and good conscience should go to the holders of those notes?"

Applying the doctrine to this case we conclude that the secretary, as receiver, is not entitled to participate in the proceeds of the trust until the claim of the Reserve

Bank against the trust company upon the notes which it holds, is, to the extent as provided in the trust deed, paid in full. An inequitable result would be reached if distribution were permitted upon any other basis under the circumstances.

It is immaterial that the collateral in this case consisting of the insurance trust did not actually accompany the notes into the hands of the Reserve Bank. In contemplation of law it did so, under our rule that collateral for a debt follows the obligation into the hands of the assignee thereof: *Beaver Trust Co. v. Morgan,* 259 Pa. 567; *Plummer v. Wilson,* 322 Pa. 118; *Homewood Peoples Bank v. Cull,* 85 Pa. Superior Ct. 480.

The result here reached imposes no hardship upon the trust company, or its depositors. The trust company, upon the pledge of the notes in question, received full value for them from the Reserve Bank. It has thus recouped itself upon the Schrenk loan, which, because of his insolvency and death, it might otherwise have been unable to do. The loans and advances made by the Reserve Bank presumptively found their way into the general assets of the trust company and were used to pay depositors and other creditors before closing. Its assets are greater by the amounts borrowed upon these notes from the Reserve Bank, and no inequity results.

It would serve no useful purpose to discuss the further contentions, so earnestly urged by appellant, as reasons for the reversal of the decree which is here reviewed. It is insisted that the trust company is no longer liable upon the Schrenk, Loughran and Fischer notes, because they were not presented for payment and duly dishonored and the trust company notified thereof.

While the record does not disclose that this question was presented to the court below for its consideration, it is sufficient to say that this contention is entirely beside the fundamental issue before us. Here we are concerned solely with the right to priority in the distribution of insufficient collateral. Hence the significant and

controlling fact is that the insolvent trust company is liable upon its own collateral note to the Reserve Bank.

For the reasons stated the decree of the court below is affirmed.