Agricultural Trust and Savings Company's Mortgage Pool Case.

Argued November 30, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

582

*J. Andrew Frantz,* with him *Horace M. Barba,* Special Deputy Attorney General, *Oliver C. Cohen,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellant.

*Wm. B. Arnold,* with him *H. Edgar Sherts* and *M. M. Harnish,* for appellees.

*John Mulford* for interested party, under Rule 61, filed a brief.

OPINION BY MR. JUSTICE BARNES, March 21, 1938:

The single question presented by this appeal may be stated as follows: Has an insolvent trust company which holds an unsold portion of a mortgage trust pool, the right to participate with certificate holders in the proceeds realized from the sale of mortgages held in the pool, where it has issued certificates of participation with a guarantee of payment in full of principal and interest?

The parties have presented an agreed statement of facts, from which it appears that the Agricultural Trust

and Savings Company of Lancaster, on March 5, 1929, by resolution of its Board of Directors, set aside a group of mortgages in its trust department, and identified them as "Mortgage Pool Series B." The resolution authorized a pool of $100,000 in first mortgages on improved real estate.

Certificates of participating interests in the pool were sold by the Trust Company to the investing public. A certificate so issued contained on its face an acknowledgment by the Trust Company that it had received from the person to whom the certificate was issued, a specified sum of money to be held together with other moneys received upon similar certificates, "as a mortgage trust fund, separate and apart from the assets of the Company, in trust for the holders of the said certificates." Interest at the rate of 4½% per annum was to be paid to the certificate holder upon the principal amount invested. The Company covenanted in the certificate that the payments to the holders were to be made "without any deductions for taxes, expenses or losses incurred in the management of the fund, the Company hereby guaranteeing payment of principal and interest in full, excepting, however, any U. S. Income Tax which may be imposed upon the income of the holder of this certificate."

The mortgages within the pool carried interest at the rates of 5½% and 6%, the Trust Company retaining as its profit the difference between the interest so received and the interest paid to certificate holders.

In the operation of the pool the Trust Company at all times had funds invested therein, but no certificates were issued for this interest, as the amount varied from time to time when mortgages were added to or withdrawn from the pool, and as participating certificates were sold or redeemed.

The Secretary of Banking took possession of the Company on January 7, 1932, at which time the mortgages in the pool had an aggregate face value of $47,725,

against which there were outstanding in the hands of outside parties participating certificates to the amount of $36,500, leaving a balance of $11,225 as the interest of the Company in the pool, for which, as stated, no certificates had been issued. The court below on January 21, 1933, appointed a substituted trustee of the mortgage pool, to succeed the Secretary of Banking. The mortgages in the pool were liquidated by the Trustee for less than their face amount.

When the trustee filed his first and second accounts, the Secretary of Banking as Receiver for the Trust Company, claimed to be entitled to a pro rata share with certificate holders in the proceeds for distribution. A sum representing such amount was set aside pending the final determination of the rights of the parties. Upon the filing of the present third and final account, the Receiver claims $1,817.99 of the balance for distribution, as well as the sum of $4,714.49, representing the pro rata share withheld in the prior accountings.

The court below disallowed the claim of the Receiver and ordered the Trustee to make distribution to the certificate holders in full payment of principal and interest. The decree directed the Trustee to pay any sum then remaining to the Receiver. It is from this decree that the Receiver has taken the present appeal.

On behalf of the Receiver it is contended that the certificate is devoid of any provision conferring upon the certificate holders a priority in distribution over the Trust Company; that there is nothing therein which pledges the investment of the Trust Company in the mortgage pool as additional security for the protection of the certificate holders. While it may be conceded that the certificate does not expressly stipulate that holders shall be preferred in the liquidation of the mortgage pool, it is manifest, however, that the parties did not contemplate that the Trust Company would compete with certificate holders in the distribution of the fund. That no pro rata distribution was intended ap-

pears from the fact that at the time the pool was created and the certificates issued, the assets constituting the pool, principally mortgages, were definitely segregated and held as a separate trust apart from the general assets of the Trust Company, completely identified and earmarked for the sole purpose of paying the participation certificates. A further indication that the interest of the Trust Company in the pool was subordinate to that of the certificate holders is evidenced by the undertaking of the Trust Company to make all payments due upon the certificates *without deduction of expenses or losses incurred in the management of the pool,* together with its express guarantee of payment in full of principal and interest. No doubt it was this covenant of full payment backed by the entire resources of the Trust Company, both within and without the pool, that constituted the principal inducement to the prospective investor in these certificates. In return for the obligation so assumed, the Trust Company received the differential in the interest rate of the mortgage pool over the participation certificate.

We cannot agree with the contention of the Receiver that the investment of general funds of the Trust Company in the mortgage pool, and the investment of the certificate holders therein are essentially similar. In our opinion there is a fundamental difference in the legal status of the claims of the parties.

The question here raised is a narrow one and is substantially similar to that considered in the *North City Trust Company Case,* 327 Pa. 356. While the facts of the two cases are different, the basic principle upon which the case mentioned was decided applies to the present claim. There it was said (p. 359): "While we agree that the general rule governing the equitable distribution of insufficient collateral is that all creditors whose claims are on a parity share in the proceeds of such collateral pro rata, that principle is without force when the claims are not upon a parity: *Barkley's Es-*

*tate,* 268 Pa. 370." And further (p. 360), ". . . where the proceeds of collateral are insufficient to pay the obligations secured thereby, the holder of a portion of such obligations is entitled to the proceeds thereof, to the exclusion of his insolvent pledgor, who is liable over to such pledgee." Here, as in that case, the principle of "equality is equity" is without application because the claim of the Receiver is not upon a parity with the claims of the certificate holders.

The mere relationship of assignor and assignee, which in substance is the relationship between the Trust Company and the certificate holders, to whom it has sold and assigned participating interests in the mortgage pool, does not confer a right of priority in favor of the assignees in the distribution of insufficient collateral, and if, upon liquidation of the security, the proceeds derived therefrom are insufficient to satisfy the secured claims in full, all claimants share in the fund pro rata: *Donley v. Hays,* 17 S. & R. 400; *Mohler's App.,* 5 Pa. 418; *Perry's App.,* 22 Pa. 43; *Hodge's App.,* 84 Pa. 359; *Moore's App.,* 92 Pa. 309; *McLean & Jackson's App.,* 103 Pa. 255; *Patrick's App.,* 105 Pa. 356.

Where, however, as in this case, the assignor also stands in the position of debtor to the assignees, in relation to the fund or transaction from which the relationship arises, equitable principles require that the claim of the assignor be postponed until the claims of such assignees are paid in full: *Appeals of Fourth National Bank,* 123 Pa. 473; *North City Trust Company Case,* supra. See also *Erb's App.,* 2 P. & W. 296; *Himes v. Barnitz,* 8 Watts 39.

Here, in our opinion, the positive undertaking of the Trust Company in favor of the certificate holders requires the application of ". . . the equitable principle which forbids a joint debtor, who is insolvent, to divert a fund from a creditor to whom he owes it, into his own irresponsible pocket": *Worrall's App.,* 41 Pa. 524, 531. In view of the guarantee given by the Trust Company

to the certificate holders that principal and interest would be paid, and the profits flowing to it as a result of such guarantee, it clearly appears to have been the intention of the parties that the Trust Company was to be excluded from participation in the proceeds of the mortgage pool until the holders of the outstanding certificates were paid in full. The fund was created for the benefit of the certificate holders as a trust fund, and to hold in the face of the guarantee that the Receiver of the Trust Company may share in the proceeds of the mortgage pool on an equal basis with the certificate holders would produce an inequitable result which was not within the apparent intention of the parties.

Judgment affirmed.