## First Mortgage Corporation of Philadelphia v. Integrity Trust Company, Trustee, et al.

*John Mulford*, for plaintiff.

*Adams, Childs, McKaig & Lukens* and *Duane, Morris & Heckscher*, for defendants.

SLOANE, J., April 1, 1938.—This is a petition for a declaratory judgment. There is no question of jurisdic-

tion and the facts are agreed. There is only a question of law: Is petitioner, as the owner of bonds, entitled to participate equally with other holders of the same class of bonds, when petitioner acquired title to the bonds from the guarantor after maturity with notice of its assignor's liability as guarantor?

Let me state the facts:

Petitioner (the First Mortgage Corporation of Philadelphia) owns $16,000 principal amount of "Commodore Theatre First Mortgage 6% Sinking Fund Gold Bonds" out of a total issue of $300,000. They were assigned, *after maturity*, to petitioner, for value, by the First Mortgage Company of Philadelphia (herein called the Mortgage Company), a different entity, the successor of the Seaboard Bond and Mortgage Company and the guarantor of the entire issue. The Mortgage Company in the conduct of its business had acquired bonds and resold them prior to their maturity. After insolvency and receivership, and after maturity of the bonds, the receivers of the Mortgage Company assigned the particular $16,000 of bonds remaining in the Mortgage Company's porfolio to petitioner. Petitioner knew that the bonds had matured (and, of course, were not paid) and that its assignor was the guarantor and could not meet its guaranty.

When the bonds had gone into default, a committee was formed to accept deposits of bonds and generally to protect the bondholders' interests. Petitioner offered its bonds to the committee for deposit, but the committee refused to accept them, claiming that petitioner as a bondholder was not on a par with the other depositing bondholders, since petitioner's bonds were acquired *after maturity from an insolvent guarantor*, with knowledge. The bondholders' committee has evolved a plan of reorganization on behalf of the depositing bondholders, and foreclosure on the mortgage securing the bonds is about to take place.

Petitioner thereupon filed this petition for a declaratory judgment to determine the controversy and the ques-

tion was argued before this court. We delayed decision because we were informed of an action pending in the Supreme Court which when decided would be determinative of the issue involved here. The opinion was handed down by Mr. Justice Barnes on March 21, 1938, in Agricultural Trust & Savings Company's Mortgage Pool Case, 329 Pa. 581.

We think that the decision of our Supreme Court in the above case is decisive of the issue in this matter. The same principle is involved. The claims of petitioner and of the other bondholders are not upon a parity, and to permit petitioner to share ratably with the other bondholders would be against "the equitable principle which forbids a joint debtor, who is insolvent, to divert a fund from a creditor to whom he owes it, into his own irresponsible pocket": Worrall's Appeal, 41 Pa. 524, 531; Agricultural Trust & Savings Company's Mortgage Pool Case, supra.

Petitioner attempts to distinguish the Agricultural Trust Company decision in three respects:

(1) That petitioner was a purchaser for value from an insolvent guarantor,

(2) That the trust agreement under which the bonds were issued provided that all bondholders were to share ratably, and

(3) That the insolvent guarantor *repurchased* these bonds from bondholders, whereas in the above case the Agricultural Trust & Savings Company had never issued the participation certificates that were involved there.

1. It is true that petitioner paid consideration for these bonds, but whether it did or not, its rights rise no higher than the insolvent guarantor's from whom it acquired them. Otherwise it would be very simple for an insolvent guarantor to enhance or improve its right of parity by disposing of the bonds to a purchaser for value.

2. The second distinction attempted to be made is that the trust agreement pursuant to which the bonds were

issued provided for equality amongst the bondholders. The trust agreement provided in part that the mortgaged property was granted to the trustee "in trust nevertheless for the use, benefit and security . . . of the several persons . . . who shall be or become holders or registered owners of said bonds and coupons issued or to be issued hereunder, without discrimination or priority by reason of the time of the issuance or negotiation thereof or otherwise, except as hereinafter specifically provided."

The bond provides in part that it is one of a series of bonds "each of like date, tenor and effect . . . and each entitled to the security of a certain mortgage".

Petitioner claims that this language is sufficient to contemplate that the guarantor could repurchase bonds, and regardless of its defaulted guaranty be on a parity with the other bondholders. I do not think that the indenture contemplated any such effect. What was meant by this typical insertion in the trust indenture was that the bondholders were to share alike, *other equities being equal.* The guarantor cannot be on equal footing with the other bondholders in the absence of specific and direct language.

3. Petitioner claims this further distinction, namely, that the insolvent guarantor did not have these bonds in its possession from the very start, but that it purchased them in the open market from other bondholders. We do not see that this makes any difference. The fact remains that the guarantor itself owned these bonds *at maturity,* and at a time when it was indebted to the other bondholders under its guaranty. The mere fact of time of purchase should make no difference with respect to those other bondholders.

We think this case is controlled by the decision in the Agricultural Trust Company case, and we therefore hold that petitioner is not entitled to share equally and ratably with the other bondholders. A decree will be entered accordingly.