## Sweeney, etc., v. Mechanics Trust Co. et al.

*Robert T. Fox*, for plaintiff.
*William H. Dunbar*, for defendants.

WOODSIDE, J., August 10, 1945.—The question here involves the priority of two liens on a certain tract of real estate in Cumberland County.

Title to the premises in question, known as 222 South Front Street, Wormleysburg, was held by William F. Martin and Lillie B. Martin, his wife, as tenants by entireties, prior to April 18, 1928. On that day the Mechanics Trust Company entered judgment on a note in Cumberland County in the amount of $40,000 against William F. Martin alone.[1] This judgment has been kept alive by revivals, each made within five years of the original entry or of the prior revival.

On September 5, 1928, William F. Martin and Lillie B. Martin, his wife, executed and delivered to the Mechanics Trust Company, a mortgage in the amount of $15,000 on the same premises.

Lillie B. Martin died November 24, 1938.

---

[1] The last revival of this note was on February 25, 1943, in the amount of $39,189.67. Upon the upper left-hand corner of said note is written "Collateral". The minutes of the Mechanics Trust Company disclose the fact that the Directors authorized the taking of a mortgage for $60,000 on certain property in the City of Harrisburg, Dauphin County; $40,000 on a judgment to be entered in the Counties of Dauphin, Cumberland and Perry, and a line of credit for $25,000, and it is agreed that said $40,000 judgment was not in fact held as collateral in the accepted sense, the Dauphin County judgment and the Cumberland County judgment being a part of one and the same transaction.

Taking the records of the Prothonotary and the Recorder of Deeds of Cumberland County alone, the judgment of $40,000 became a first lien on the premises upon the death of Mrs. Martin, and a sheriff's sale of the premises on the judgment would discharge the mortgage: Fleek v. Zillhaver, 117 Pa. 213 (1887); even though during the lifetime of Mrs. Martin she and her husband could have conveyed the premises free and clear of the lien of the judgment: Beihl v. Martin, 236 Pa. 519 (1912). But there are other relevant facts to be considered which throw a different light on the case.

From the facts agreed upon by the parties it appears that prior to the entry of the $15,000 mortgage and the $40,000 judgment, William F. Martin and his wife had executed and delivered to the Mechanics Trust Company, a mortgage for $12,000 on the aforesaid premises. Shortly after the entry of the $15,000 mortgage in favor of the Mechanics Trust Company this $12,000 mortgage was satisfied. At the same time a number of other judgments against William F. Martin entered between the date of the two mortgages were satisfied by Victor Braddock, a member of the bar of this county. This was done so that the $15,000 mortgage would be a first lien.

It is admitted that the Mechanics Trust Company sold and delivered its Certificates of Participation evidencing beneficial interest in the $15,000 mortgage and its accompanying bond to various parties, for a total of $14,500, the balance of $500 being held by the Mechanics Trust Company in its mortgage pool.

In a letter dated September 5, 1928, to Victor Braddock, Esq., it was stated by the president of the Mechanics Trust Company that "we will expect you to certify that the new mortgage is a first lien on the premises in question." Attorney Braddock refused to certify the said mortgage as a first lien unless and until the lien of the judgment for $40,000 would be postponed

to the lien of the said mortgage. This, it is admitted, the Mechanics Trust Company intended to have its president do, but through oversight or neglect it was never done.

Furthermore, the Mechanics Trust Company guaranteed to the holders of said certificates the payment of the principal and interest of said bond and mortgage according to its terms in consideration of the sum of one percent per annum of the principal sum of said bond and mortgage which was deducted by the Mechanics Trust Company from the interest.

On October 23, 1931, the Mechanics Trust Company was taken over by William D. Gordon, Secretary of Banking, as Receiver, because of insolvency.

On December 31, 1936, John F. Sweeney, the plaintiff in this action was appointed by this court as substituted fiduciary for, inter alia, the mortgages, securities and other assets of the Mechanics Trust Company in which undivided interests had been created by the said trust company, and on March 1, 1937, the aforesaid $15,000 mortgage and its accompanying bond, were assigned to the plaintiff by the receiver of the Mechanics Trust Company. Between October 23, 1931, and December 31, 1936, the Secretary of Banking as receiver was fiduciary for the assets taken over by the plaintiff as well as the other assets of the trust company.

That there was a cloud on the lien position of the mortgage was not brought to the attention of the plaintiff until May of 1941, and because of difficulty which the defendant had in finding certain of its records, the circumstances surrounding the entry of the judgment and the recording of the mortgage were not available to the plaintiff until February of 1942. After the defendant threatened to issue execution on said judgment and to sell the aforesaid premises, the bill in equity in this case was filed (May 20, 1942) asking the court to

restrain the defendant from issuing execution upon the $40,000 judgment or any revival thereof. An agreed statement of facts was filed, and the case was argued June 12, 1945.

It is admitted by the defendant, the receiver of the Mechanics Trust Company, that it was the intent of the Mechanics Trust Company that the lien of the $40,000 judgment should be postponed to the lien of the $15,000 mortgage, and that the said mortgage should be a first lien on the premises.

It is further admitted by the defendant that the participations in the said mortgage were sold by the Mechanics Trust Company upon its representation that the said mortgage was a first lien upon the premises covered thereby.

If the Mechanics Trust Company had not become insolvent, it is reasonable to assume that when the officials of the company discovered that the records of the prothonotary had not been marked in accordance with the original intent, the postponement would have been entered upon the record no matter how long before its discovery the oversight had occurred, and particularly is this true in consideration of the fact that interests in this mortgage were sold upon the representation of the trust company that the mortgage was a first lien. Certainly if the trust company would have had the matter called to its attention and would have refused to carry out its intent by proper action, it would have so shocked the conscience of any court of equity with jurisdiction that it would promptly require the trust company to do that which had been intended, and which had been represented by the trust company as having been done. Certainly the trust company would not be permitted to profit by virtue of its neglect at the expense of the holders of certificates which it had represented to be interests in a first mortgage. This seems to us to be so clear that it is hardly necessary to quote equitable maxims or cite cases to sustain the proposition.

If it would be necessary we need but refer to the following maxims and cases: "Equity regards and treats that as done which in good conscience ought to be done," and "Equity imputes an intention to fulfill an obligation": Young Bros. & Co., to use of Jenkins, v. Coray et al., Executors of George Coray, 167 Pa. 617 (1895); City of Philadelphia v. Myers, 102 Pa. Superior Ct. 424, 432 (1931); Mallory's Estate, 285 Pa. 186, 190 (1926).

Does the fact that the trust company has become insolvent and that its interests are now represented by the Secretary of Banking as receiver, change the rule which would be applied to a situation of this kind had the defaulting party not become insolvent? We think not. The receiver here is in the same position as the trust company.

"A receiver can acquire no greater interest than his insolvent had in the estate; and choses in action pass to the receiver, subject to equitable right to set off existing debts at the time of his appointment . . . We think his power and authority rise no higher than that of an assignee under a voluntary assignment for the benefit of creditors," said Wickersham, J., speaking for this court in Gordon, Secretary of Banking, v. Tausig, 16 D. & C. 539, 541.

When a bank makes an assignment for the benefit of creditors the assignee has no right greater than that of the bank. Jordan et al., Assignees, v. Sharlock, 84 Pa. 366 (1877).

"A receiver can acquire no greater interest than his insolvent had in the estate . . . The appointment of a receiver does not affect the obligation of contracts, or their right of action, existing between the parties when the property is given over to the receiver . . .": Barclay v. Edlis Barber Supply Co., 39 Pa. Superior Ct. 482, 485 (1909).

In 1889 Justice Paxson said: "The fact that it is now represented by its assignee for creditors does not alter

the position in any degree. We have said so often that the assignee is but the representative of the assignor, standing in his shoes, enjoying his rights only, that we are almost weary of repeating it. Yet it seems as necessary to say it now as it ever was": Fourth National Bank's Appeal, 123 Pa. 473, 485 (1889).

In Morris' Appeal, 88 Pa. 368, 382 (1879), the court held that an assignee for the benefit of creditors is the mere representative, his assignor enjoying his rights only, and is bound where he would be bound.

In 3 Michie on Banks & Banking, 215, §96, we find: "The receiver stands in the place of the bank which he represents, and has only such rights as it had, so that the rights of third parties are not increased, diminished, or varied by his appointment. . . . The receiver derives his rights to the bank's contracts from the bank itself, and is affected by them as the bank would be. He can assert no claim as to them that bank could not make."

Long before the receiver took over the Mechanics Trust Company that institution should have had marked on the records of the Prothonotary of Cumberland County that the lien of the judgment was postponed to the lien of the mortgage. This was the intention. This intention should not be thwarted: Morris' Appeal, supra. It sold securities representing that they were secured by a first lien.

It is true that "The status of all parties shall become fixed on the date the secretary takes possession of the business and property of the institution, as receiver": Department of Banking Code of May 15, 1933, P. L. 565, sec. 712, as amended, 71 PS §§733-712. But at the time the receiver took over the institution the records should have shown the postponement of the lien of the judgment. Since "equity regards and treats that as done which in good conscience ought to be done", we consider the lien of the mortgage to be a first lien at the time the receiver took over the trust company:

Stark et ux. v. Lardin, Exec., 133 Pa. Superior Ct. 96, 102 (1938).

We would come to the same conclusion whether the mortgage participation certificates contained a guarantee by the Mechanics Trust Company of the principal and interest of the mortgage or not, but certainly that such a guarantee is contained in the certificate doesn't strengthen the position of the defendant: Agricultural Trust & Savings Company's Mortgage Pool Case, 329 Pa. 581 (1938) ; North City Trust Co. Case, 327 Pa. 356 (1937) ; In re Rittenhouse Hotel, 31 D. & C. 633 (1938) ; Land Title Bank & Trust Co., Trustee, v. Robinson et al., 33 D. & C. 1 (1938).

And now, to wit, this tenth day of August, A. D. 1945, it is hereby ordered and decreed that William C. Freeman, Secretary of Banking of the Commonwealth of Pennsylvania, as receiver for Mechanics Trust Company, his deputies, attorneys, agents and employes, are hereby restrained from issuing or causing to be issued, any execution upon the judgment of $40,000 in favor of said trust company and against William F. Martin, to no. 383, May term, 1928, or any revival thereof, in the office of the Prothonotary of Cumberland County, Pennsylvania, whereby the premises covered by a mortgage given by William F. Martin and Lillie B. Martin, his wife, to the Mechanics Trust Company, dated September 5, 1928, for $15,000 on premises known as 222 South Front Street, Wormleysburg, Pennsylvania, may be seized, taken in execution and sold; unless and until there is marked on said judgment record that the lien thereof is postponed to the lien of the aforesaid mortgage; and the said receiver, his deputies, attorneys, agents and employes are hereby further restrained from selling, disposing of or otherwise parting with the ownership of said judgment note or other evidence of indebtedness by which the said judgment might be held as collateral, or the judgments itself, or any in-

terest thereof, unless and until there is marked on said judgment record that the lien thereof is postponed to the lien of the aforesaid mortgage.